# EXHIBIT C

PATRICK DEEM
PO BOX 2190

BOOK 1449 PAGE 70

# CREDIT LINE DEED OF TRUST,
## SECURITY AGREEMENT AND FIXTURE FILING

**THIS INSTRUMENT SECURES AN OBLIGATION THAT MAY INCREASE AND DECREASE FROM TIME TO TIME.**

**THIS INSTRUMENT CONTAINS AFTER ACQUIRED PROPERTY PROVISIONS.**

**THIS DEED OF TRUST IS FILED FOR RECORD IN THE REAL ESTATE RECORDS AS A FIXTURE FILING PURSUANT TO WEST VIRGINIA CODE SECTION 46-9-502.**

 **THIS CREDIT LINE DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING** (the "Deed of Trust and Security Agreement"), dated as of August 30, 2007 and effective as of August 31, 2007, by and among **OHIO VALLEY UNIVERSITY, INC.,** a West Virginia corporation, whose address is 1 Campus View Drive, Vienna, West Virginia 26105-8000 (the "Grantor"), and **DAN MARSHALL**, a resident of Wood County, West Virginia, as trustee (the "Trustee"). The beneficiary of this Deed of Trust and Security Agreement at the time of execution and delivery is **UNITED BANK, INC.** (the "Beneficiary"), as trustee under the hereinafter described Indentures.

 **WITNESSETH:** That for and in consideration of the indebtedness and trusts hereinafter set forth and the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor does hereby grant and convey unto Trustee for the benefit of the Beneficiary:

 (A)  All of its right, title and interest in and to that certain real estate more particularly set forth and described in "**EXHIBIT A - CAMPUS REAL PROPERTY**," attached hereto and incorporated by reference herein, together with all rights, privileges, easements, hereditaments and appurtenances thereunto belonging or appertaining (the "Premises") as owner, lessee, sublessee or otherwise;

 (B)  All equipment, furniture, facilities and other personal property of every kind and nature, now owned or hereafter acquired, whether considered real property, personal property or fixtures, and proceeds thereof, located on the Premises (collectively, the "Equipment");

 (C)  Any and all buildings, improvements and fixtures of every kind, and all machinery, equipment and property now or hereafter owned by Grantor or in which it shall have an interest which are or shall be attached to, or be deemed to be fixtures and a part of, the Premises, and all easements and rights-of-way appertaining thereto (collectively, the "Fixtures");

 (D)  All right, title and interest of Grantor in and to all rents from any and all of the Premises, Fixtures and Equipment (all of the foregoing being collectively referred to as the "Rents"), together with the right to collect and apply the same to any indebtedness secured hereunder but subject, however, to the right of the Grantor to collect the Rents as long as the Grantor is not in default hereunder. The foregoing assignment shall be fully operative without any further action on the part of any party hereto. The Beneficiary shall be entitled, at its option upon the occurrence of an Event of Default, as hereinafter defined, to all Rents from the

CH893647.5

BOOK 1430 PAGE 82

Premises, Fixtures and Equipment whether or not the Beneficiary takes possession of the Premises. Upon the occurrence of an Event of Default, the permission hereby given to the Grantor to collect such Rents shall terminate, and such permission shall not be reinstated, upon a cure of the default without the Beneficiary's specific consent. Neither the exercise of any rights under this paragraph by the Beneficiary nor the application of any such Rents to the Secured Debt, as hereinafter defined, shall cure or waive any Event of Default or notice of any Event of Default hereunder or invalidate any act done pursuant hereto or to any such notice, but shall be cumulative of all other rights and remedies;

(E)     All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, but not limited to

(i)     all proceeds of insurance or condemnation awards or other guaranties or warranties which Grantor now has or may hereafter acquire with respect to the Premises, Fixtures, Equipment and/or the Rents and all proceeds of any sales or other dispositions of the property comprising any part thereof; and the Beneficiary is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquittances therefor, and (if it so elects) to apply the same toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable;

(ii)    all contract rights, general intangibles, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums arising from or relating to the Premises, Fixtures and Equipment above; and

(iii)   all proceeds, products, replacements, additions, substitutions, renewals and accessions of and to the Premises, Fixtures and Equipment.

The foregoing provisions hereof shall constitute an absolute and present assignment of the rents, income and other benefits from the property described in the granting clauses above, subject, however, to the conditional permission given to the Grantor to collect and use such rents, income and other benefits as hereinabove provided; and the existence or exercise of such right of the Grantor shall not operate to subordinate this assignment to any subsequent assignment, in whole or in part, by the Grantor, and any such subsequent assignment by the Grantor shall be subject to the rights of the Beneficiary hereunder; and

(F)     All Accounts, Bank Accounts, General Intangibles, Gross Receipts, and Related Rights (all as defined in the Indentures) of the Grantor now owned or hereafter acquired.

All of the foregoing are sometimes collectively referred to as the "Secured Property" and shall secure the indebtedness herein described and covered by this Deed of Trust and Security Agreement.

**TO HAVE AND TO HOLD** the Secured Property unto the Trustee and their successors in trust forever; and Grantor does hereby covenant to and with the Trustee and their successors and assigns, that Grantor will warrant generally the Secured Property hereby conveyed; that Grantor has the right to grant and convey the Secured Property to Trustee; that the same is free from any and all liens and encumbrances other than Permitted Encumbrances (as defined in the hereafter described Master Indenture); that Trustee shall have quiet possession thereof and that Grantor will execute and deliver such other and further assurances of the Secured Property as may be requisite, including, but not limited to, the execution and delivery of

CH893647.5                                    2

financing statements, continuation statements and such other instruments as the Trustee may require to impose the lien and security interest hereof more specifically upon any item or items of property, or rights or interests therein, covered by this Deed of Trust and Security Agreement, and will do such other and further reasonable acts as the Trustee may require to carry out more effectually the purposes of this Deed of Trust and Security Agreement.

**IN TRUST NEVERTHELESS** to secure the obligations of the Grantor under

      (i)     that certain Master Trust Indenture dated as of August 30, 2007 by and between the Grantor and United Bank, Inc., as master trustee, (the "Master Trustee"), as amended and supplemented by Supplemental Master Trust Indenture 2007-1 dated as of August 30, 2007, (collectively the "Master Indenture"), and the Series 2007 A Bonds but not the Series 2007 D Bonds issued thereunder,

      (ii)    that certain Trust Indenture (the "Series B Indenture") dated as of August 30, 2007 by and between The County Commission of Wood County (West Virginia) and United Bank, Inc., as bond trustee, and the obligations issued thereunder, and

      (iii)   that certain Trust Indenture (the "Series C Indenture") dated as of August 30, 2007 by and between The Wood County (West Virginia) Building Commission and United Bank, Inc., as bond trustee, and the obligations issued thereunder,

      (iv)   that certain $300,000 Line of Credit between Cornerstone Bank, Inc. and the Grantor and that certain $200,000 Line of Credit between United Bank, Inc. and the Grantor (collectively, the "Line of Credit") issued pursuant to agreements between the respective banks and the Grantor.

(collectively, the Master Indenture, Series B Indenture, and Series C Indenture, the "Indentures" and all obligations thereunder and the Line of Credit are the "2007 Obligations").

      This Deed of Trust and Security Agreement also secures any and all replacements, extensions, modifications and/or renewals of the 2007 Obligations and the Indentures, or any part thereof, however changed in form, manner or amount, and all other indebtedness of Grantor to Trustee or otherwise, at any time and from time to time arising hereunder or under the Master Indenture, and any and all replacements, extensions, modifications and/or renewals of such other indebtedness (all of which indebtedness, together with the interest thereon, is sometimes hereinafter collectively referred to as the "Secured Debt").

      Grantor, for and in the consideration aforesaid, covenants, represents, warrants and agrees as follows:

      1.     That it will, so long as the Secured Debt, or any part thereof, remains unpaid:

          (a)    pay as and when due and payable all taxes, assessments, impositions and other governmental charges, fines and fees that may be levied or assessed against the Secured Property or any part thereof, including the buildings and improvements now situate on the Premises, or that may hereafter be erected thereon, and any improvements and additions made therein or thereto from time to time, all as provided in the Indentures and subject to the terms thereof;

          (b)    have and keep the buildings and improvements now situate on the Premises or that may hereafter be erected thereon, and all other insurable property covered by this Deed of Trust and Security Agreement, constantly insured against loss or damage by fire and such other

casualties, contingencies and hazards as set forth in the Indentures and subject to the terms thereof;

(c)     keep and maintain the Secured Property in good condition and repair and not abandon the same, or any part thereof, as provided in the Indentures and subject to the terms thereof, nor commit or permit the commission of waste on or in the Secured Property, or any part thereof, or permit any building or improvement to be removed, destroyed, demolished or structurally altered in whole or in part except as permitted by the Indentures, and Grantor shall as provided in the Indentures and subject to the terms thereof, comply, and cause all occupants of the Secured Property or those in possession thereof to comply, with all laws, ordinances, orders, rules, regulations and requirements relating to the use or maintenance of the Secured Property and with all requirements, directions and orders and notices of violations thereof issued by any governmental agency, body or officer;

(d)     permit the Beneficiary or its agents, to enter and inspect the Secured Property at all reasonable times; and

(e)     pay to the Beneficiary upon demand, any and all sums of money, including all costs, expenses and reasonable attorneys' fees, which the Beneficiary may incur or expend in any action or proceeding that may concern the Secured Property, or any part thereof or interest therein, including without limitation any eminent domain proceeding, or any action or proceeding to sustain the lien of this Deed of Trust and Security Agreement, or its priority, or in defending any party thereto, or any party secured hereby, against the liens, demands or claims of title of any person, firm or corporation, asserting priority over this Deed of Trust and Security Agreement, or asserting title adverse to the title under which the Grantor holds, or in the discharge of any such liens, demands or claims, or in connection with any action to foreclose this Deed of Trust and Security Agreement, or to recover any indebtedness secured hereby or any other payments made on behalf of the Grantor pursuant to the Indentures.

2.     The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust and Security Agreement, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act. 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents, covenants, and warrants to the Beneficiary that:

(a)     During the period of Grantor's ownership of the Secured Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, about or from the property except in substantial compliance with all applicable federal, state and local laws, ordinances, rules or regulations;

(b)     Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by the Beneficiary in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance on, under, about or from the Secured Property by any prior owners or occupants of the Secured Property except in substantial compliance with all applicable federal, state and local laws, ordinances, rules or regulations or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and

(c)     Except as previously disclosed to and acknowledged by the Beneficiary in writing, neither Grantor nor any tenant, contractor, agent or other authorized user of the Secured Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, about or from the Secured Property unless any such activity is conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above.

Grantor authorizes the Beneficiary and its agents to enter upon the Secured Property to make such inspections and tests, at Grantor's expense, as the Beneficiary may reasonably and in good faith deem appropriate to determine compliance of the Secured Property with this Section of the Deed of Trust and Security Agreement. Any inspections or tests made by the Beneficiary shall be for its purposes only and shall not be construed to create any responsibility or liability on the part of the Beneficiary to Grantor or to any other person. The representations, covenants, and warranties contained herein are based on Grantor's due diligence in investigating the Secured Property for hazardous waste and hazardous substances. Grantor hereby (a) releases and waives any future claims against the Beneficiary and Trustee for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless the Beneficiary and Trustee against any and all claims, losses, liabilities, damages, penalties, and expenses which the Beneficiary or Trustee may directly or indirectly sustain or suffer resulting from a breach of this Section of this Deed of Trust and Security Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Secured Property, whether or not the same was or should have been known to Grantor.

The Secured Property, or some substratum of the Secured Property, does not contain an underground storage tank or tanks. To the extent that there may be some obligation under state or federal law imposed upon the Beneficiary or the Trustee with respect to any such underground storage tank, the Grantor warrants that such tank or tanks, and all lines and connections thereto have been Secured Property inspected and tested, and all such tanks, lines and connections are tight such that there is no leakage therefrom. Grantor hereby (a) releases and waives any future claims against the Beneficiary and Trustee for indemnity or contribution in the event Grantor becomes liable for clean-up or other costs associated with such tanks, lines and connections, and (b) agrees to indemnify and hold harmless the Beneficiary and Trustee against any and all claims, losses, liabilities, damages, penalties, and expenses which the Beneficiary or Trustee may directly or indirectly sustain or suffer resulting from a breach of this Section of this Deed of Trust and Security Agreement or as a consequence of any use, storage, disposal, release or threatened release from such tanks, lines and connections, whether or not the same was or should have been known to Grantor.

The provisions of this Section of this Deed of Trust and Security Agreement, including the obligations to indemnify and hold harmless, shall survive the payment of the Secured Debt and the satisfaction and reconveyance of the lien of this Deed of Trust and Security Agreement and shall not be affected by the Beneficiary's acquisition of any interest in the property, whether by foreclosure or otherwise.

3.      The obligations secured by this Deed of Trust and Security Agreement are in the aggregate principal amount of $16,565,000, plus interest thereon and taxes, insurance premiums and other obligations, including interest thereon, undertaken by the Grantor due under the Indentures. The proceeds of the 2007 Obligations are being applied pursuant to the terms of the Indentures for the purposes set forth therein. The Indentures are hereby incorporated into and made a part of this Deed of Trust and Security Agreement as if set forth in full herein.

4.      In the event Grantor fails to make any payment required, then, and in any such event, the Beneficiary shall have the right, without notice to or demand upon Grantor or any other person, to make any such payment, take any such action or do any such thing as, in the exercise of Beneficiary's discretion, may be determined to be reasonably necessary to protect the lien and security hereof as fully and completely as if Grantor made each and every such payment when due, and kept, complied with, performed and carried out the provisions of said paragraphs 1 and 2. Without limiting the generality of the foregoing, the Beneficiary may, in any such event,

(i)     obtain the required insurance covering the Secured Property and pay the premiums thereon or pay any unpaid premiums on any insurance procured by Grantor;

(ii)    pay said taxes, assessments, impositions and other governmental charges, fines and fees together with any penalties and interest accrued thereon, and redeem the Secured Property from a tax sale if it has been sold, and shall be subrogated to the lien of the governmental body to which such payment was made;

(iii)   make and pay for any and all repairs which Indentures Trustee deems necessary to place or keep the Secured Property in good condition and repair;

(iv)    stop or mitigate waste on or in the Secured Property or any part thereof;

(v)     stop or prevent the removal, destruction, demolition or structural alteration of any building or improvement on the Secured Property;

(vi)    stop or prevent the violation of any law, ordinance, rule or regulation relating to the use or maintenance of the Secured Property or of any requirement, direction or order or notice of violation thereof issued by any governmental agency, body or officer; and

(vii)   pay all or any part of any sum or sums of money that may be due or payable under the provisions of subparagraph (e) of paragraph 1 hereof;

and Grantor hereby promises to pay to Beneficiary upon demand, any and all sums of money paid out or expended by it for any of the purposes set out in this paragraph 4 and agrees that any sum or sums of money so paid by Beneficiary shall thereupon be and become a part of the Secured Debt, including those moneys expended on behalf of the Grantor pursuant to the Indentures, and shall be collectible as such, all without waiver of any right arising from the breach of or default in the performance of any warranty, covenant, condition, provision or agreement herein contained or contained in the Indentures, including, without limitation, the

BOOK 1449 PAGE 87

right to enter and take possession of the Secured Property, and rent and manage the same, and the right to foreclose this Deed of Trust and Security Agreement; but nothing herein contained shall be construed as imposing any duty or obligation upon Beneficiary, or upon Trustee, to pay any such sum or sums of money herein authorized to be paid, or to take any other action authorized hereunder.

5.     Upon the occurrence of a payment related Event of Default as defined in the Indentures or default by Grantor in any of its covenants hereunder (hereinafter collectively called an "Event of Default"), at the option through the Beneficiary of

(i)     the holders of at least 75% of the aggregate principal amount of outstanding Series 2007 A Bonds, or

(ii)    if no Series 2007 A Bonds are outstanding, the holders of more than 50% of the aggregate principal amount of outstanding Series 2007 B Bonds and Series 2007 C Bonds, or

(iii)   or if no Series 2007 A Bonds, Series 2007 B Bonds or Series 2007 C Bonds are outstanding, the Beneficiary,

the Secured Debt shall immediately become due and payable without notice to or demand on Grantor or any other person.

6.     If any one or more Events of Default shall occur and be continuing, any one or more of the following rights and remedies shall exist, any two or more of which may be exercised concurrently:

(A)    Without notice to or demand on Grantor or any other person, Trustee or Beneficiary may forthwith, separately or jointly:

(i)     enter into and upon all of the Secured Property, or any part or portion thereof, either in person or by agent, and take possession of the Secured Property, or any part or portion thereof, without process of law, and without liability to Grantor or other owner or owners of the Secured Property, and manage and rent the same, collect and receive the rents, issues and profits thereof (past due, due or to become due) and apply the same to the payment of the Secured Debt, after first deducting the costs and expenses incurred in managing the Secured Property and in collecting said rents, issues and profits (including reasonable compensation for managing the same and collecting and disbursing said rents, issues and profits accruing therefrom), and after deducting such further amount or amounts as may be necessary to pay or reimburse the Beneficiary and Trustee for any sum or sums of money paid by them, or any of them, under the provisions hereof; or

(ii)    have a receiver appointed by any court having jurisdiction to take charge of the Secured Property, or any part or portion thereof, and collect, receive and apply the rents, issues and profits thereof.

In either case, any person or persons in possession of the Secured Property, or any part or portion thereof, shall be deemed a tenant at will and shall at once surrender such possession on demand of Trustee or Beneficiary or a receiver. It is understood and agreed by and between the parties hereto that nothing herein contained shall be construed as a substitute for, or in derogation of, the right to foreclose this Deed of Trust and Security Agreement or as imposing any duty or obligation upon Beneficiary or upon Trustee, or any of them, to take charge of the Secured Property, or any part or portion thereof, to collect said rents, issues or profit or to have a receiver appointed for such purposes.

(B)     Without notice to or demand on Grantor or any other person, Beneficiary may at its option declare the Secured Debt to be immediately due and payable and upon the exercise of said option the Secured Debt may be collected by proper action, foreclosure of this Deed of Trust and Security Agreement, or any other legal or equitable proceeding.

(C)     At any time after the exercise by the holders of the bonds, lenders of the Line of Credit, or Beneficiary of the option to declare the Secured Debt to be immediately due and payable, the Trustee, upon the written request of the Beneficiary, shall foreclose upon and sell the Secured Property, or any part or portion thereof, at one or more successive sales, as an entirety or otherwise, both as the Trustee may deem expedient, to satisfy the Secured Debt at public auction or auctions at the front door of the courthouse of the county in which the Secured Property is situate, for cash in hand on the day of sale, after first giving legally sufficient notice each of such sale by publishing such notice in a qualified newspaper of general circulation published in the county wherein the Secured Property is located or otherwise as provided by law, once a week for 2 successive weeks preceding the day of sale. Notwithstanding anything herein to the contrary, a copy of such notice shall be served on the Grantor, by certified mail, return receipt requested, directed to the addresses shown by Grantor in paragraph 12 hereof or such other address given to the Beneficiary or Beneficiary's assignee in writing by the Grantor subsequent to the execution and delivery hereof and shall be served by certified mail, at least 20 days prior to the sale, upon any subordinate lienholder who has previously notified the Trustee or the Beneficiary, as primary lienholders, by certified mail, at the address or addresses set forth in paragraph 13 hereof, of the existence of a subordinate lien, directed to the address of the subordinate lienholder as provided by the subordinate lienholder in the notice of existence of a subordinate lien. Any other notice or notices required or permitted by law to be given to Grantor and/or any others in connection with such sale or sales and not properly waived shall be given to Grantor and/or any others as provided by applicable law at the address or addresses, if applicable, set forth in paragraph 13 hereof and as otherwise provided by applicable law. In lieu of or in addition to the foregoing, the Trustee may give notice of the time, terms and place of such sale or sales in accordance with the laws in effect on the date of commencement of such foreclosure proceedings or as may otherwise be allowed by law. Out of the proceeds of such sale, the Trustee shall pay,

(i)     first, the actual costs and expenses of executing this Deed of Trust and Security Agreement, including any additional commission permitted by law to the Trustee, or to the one so acting, as their commission hereunder;

(ii)    second to the Beneficiary and the Trustee all moneys which they or any of them may have paid for taxes, assessments, impositions or other governmental charges, fines or fees, insurance, repairs, court costs, and all other costs and expenses incurred or paid under the provisions of this Deed of Trust and Security Agreement, including, without limitation, reasonable attorneys' fees and legal expenses incurred by the Beneficiary or the Trustee in disposing of said properties, together with interest thereon at the rate provided in the Indentures from the date of payment;

(iii)    third, to the Beneficiary the full amount due and unpaid on the Series 2007 A Bonds and Line of Credit ;

(iv)    fourth, to the Beneficiary the full amount due and unpaid on the Series 2007 B Bonds and Series 2007 C Bonds as defined in the Indentures;

(v)    fifth, all other indebtedness hereby secured, together with all interest accrued thereon to date of payment; and

(vi)    sixth, the balance, if any, to Grantor, its successors or assigns, upon delivery of and surrender to the purchaser or purchasers of possession of the Secured Property less the expense, if any, of obtaining such possession, or such other parties as their interests may appear.

(D)    In addition to the rights, remedies and powers hereinabove set forth, the Beneficiary and the Trustee shall have as to the Secured Property and any and all other fixtures and personal property covered by this Deed of Trust and Security Agreement, all rights, remedies and powers of a secured party under the Uniform Commercial Code of West Virginia, as the same may now be in effect or hereafter amended (the "Code").

7.    As to any of such property as is personal property or fixtures subject to the Code, this instrument shall constitute a security agreement, and the Grantor does hereby grant a security interest therein to the Trustee and Beneficiary. This instrument is to be filed for record in the real estate records of Wood County, West Virginia, so as to serve as a fixture filing pursuant to West Virginia Code § 46-9-502.

Notwithstanding the release of any property that is deemed real property or any proceedings to have released this Deed of Trust and Security Agreement or its satisfaction of record, the terms hereof shall survive as a security agreement with respect to the security interest created hereby until the repayment or satisfaction in full of the obligations of the Grantor under the Indentures. Nothing herein shall preclude the Beneficiary or Trustee from proceeding as to both real and personal property in accordance with the Beneficiary's or Trustee's rights and remedies in respect of property as provided in Article 9 of the Code.

8.    To the extent allowed by applicable law, Grantor hereby waives personal service of notice of any sale made hereunder, but not any notice by mailing as prescribed in paragraph 6(C) hereof, upon it, its successors or assigns, and also waives the posting of notice of sale at the courthouse, and agrees that any sale made hereunder may be adjourned from time to time without notice other than oral proclamation of such adjournment at the time and place of sale, or at the time and place of any adjourned sale. The Grantor does hereby, to the full extent permitted by applicable law, waive any right to require the Trustee and/or the Beneficiary to post

a bond or any like security in connection with the performance of the Trustee's duties pursuant to the terms of this instrument.

9.      In the event that foreclosure proceedings are instituted hereunder but are not completed, Trustee shall be reimbursed for all costs and expenses incurred by them in commencing such proceedings, and, in addition, shall be entitled to, and paid, as a commission, reasonable compensation therefor; and all costs and expenses so incurred by Trustee, and such commission shall be payable by Grantor on demand, and shall be and become a part of the Secured Debt and shall be collectible as such.

10.      Trustee, or the successor or survivor thereof, may act in the execution of this trust; and the Trustee, or any successor trustee, is hereby authorized to act by agent or attorney in the execution of this trust and need not be present in person at any foreclosure sale.

11.      It is hereby expressly covenanted and agreed by all parties hereto that the Beneficiary may at any time and from time to time hereafter, without notice and with or without cause, appoint and substitute another Trustee or Trustees, corporations or persons, in place of the Trustee or Trustees herein named to execute the trust herein created. Upon such appointment, either with or without a conveyance to said substituted Trustee or Trustees by the Trustee herein named, or by any substituted Trustee in case the said right of appointment is exercised more than once, the new and substituted Trustee or Trustees in each instance shall be vested with all the rights, titles, interests, powers, duties and trusts in the premises which are vested in and conferred upon the Trustees herein named; and such new and substituted Trustee or Trustees shall be considered the successors and assigns of the Trustees who are named herein within the meaning of this instrument, and substituted in their place and stead. Each such appointment and substitution shall be evidenced by an instrument in writing which shall recite the parties to, and the book and page of record of, this Deed of Trust and Security Agreement, and the description of the Premises, which instrument, executed and acknowledged by Beneficiary and recorded in the office of the Clerk of the County Commission of Wood County, West Virginia, shall be conclusive proof of the proper substitution and appointment of such successor Trustee or Trustees, and notice of such proper substitution and appointment to all parties in interest.

12.      It is hereby expressly covenanted and agreed by all parties hereto that in the event additional Obligations (as such term is defined in the Master Trust Indenture) are issued, the parties will consent to the execution, delivery and recordation of one or more deeds of trust, mortgages, fixture filings, security agreements or other security documents upon the Secured Property, to be junior to the lien and security interests thereon created by this Deed of Trust and Security Agreement and not on parity with or senior to the lien and security interests thereon.

13.      Any notice required or permitted to be given under this Deed of Trust and Security Agreement shall, except to the extent expressly otherwise required or provided herein and except as otherwise required by applicable law, be effective upon the deposit of such notice, in writing, in the regular United States mail, certified, return receipt requested, postage paid, addressed to the party or parties to receive such notice at the following addresses or at such other address as any such party may give the other parties in the manner for giving notice herein prescribed:

TO THE GRANTOR:

    Ohio Valley University, Inc.
    1 Campus View Drive
    Vienna, West Virginia 26105-8000
    Attention: President

TO THE BENEFICIARY:

    United Bank, Inc.
    500 Virginia Street, East
    Charleston, West Virginia 25301
    Attention: Corporate Trust Department

TO THE TRUSTEE:

    Dan Marshall, Esquire
    Post Office Box 61
    Parkersburg, West Virginia 26102

The addresses of the Trustee and Beneficiary set forth above shall be the addresses to which notice of the existence of a subordinate lien shall be mailed to the primary lienholder as hereinbefore set forth.

14.    All rights and remedies herein contained shall be cumulative and not exclusive. No failure or delay of the Beneficiary or the Trustee to exercise any option, right or power herein contained shall constitute a waiver of any right, power or privilege herein given or granted to Beneficiary or the Trustee, or an acquiescence therein, and a waiver by the Beneficiary or Trustee of the right to exercise any option, right or power as to any breach or default shall not constitute a waiver of the right to exercise the same option, right or power, or any other option, right or power herein contained, as to another or any continuing or subsequent breach or default.

Neither Grantor nor any other person now or hereafter obligated for payment of all or any part of the sums now or hereafter secured by this Deed of Trust and Security Agreement shall be relieved of such obligation by reason of the failure of Trustee to comply with any request of Beneficiary or of any other person so obligated to take action to foreclose on this Deed of Trust and Security Agreement or otherwise enforce any provision of this Deed of Trust and Security Agreement, any provision of the Indentures, or by reason of the release regardless of consideration of all or any part of the security held for the indebtedness secured by this Deed of Trust and Security Agreement or by reason of any agreement or stipulation between any subsequent owner of the Secured Property and Beneficiary extending the time of payment or modifying the terms of this Deed of Trust and Security Agreement. Grantor and all such other persons shall continue to be liable to make payments according to the terms of any such agreement, unless expressly released and discharged in writing by Beneficiary or otherwise in accordance with the provisions of the Indentures.

15.    If all or any part of the Secured Property or an interest therein is sold or transferred by Grantor (except as may be permitted by the Indentures) without the prior written consent of the Beneficiary, the Beneficiary may, at its option, declare all sums secured by this Deed of Trust and Security Agreement to be immediately due and payable.

16.    It is further understood that any payment required to be made by the County Commission or the Building Commission hereunder shall be paid or promptly reimbursed by the Grantor.

CH893647.5           11

BOOK 1449 PAGE 92

17.     It is further understood and agreed between the parties hereto that if any term or provision of this Deed of Trust and Security Agreement, or the Indentures hereby secured shall contravene or be in conflict with any law of the State of West Virginia or any other applicable law or regulation, such term or provision is amended and modified to the smallest possible extent to conform with such law.

18.     It is further understood and agreed by and between the parties hereto that all of the representations, covenants, conditions, agreements, warranties and provisions of said parties herein contained shall extend to and bind Grantor, its successors and assigns, and shall inure to the benefit of the Beneficiary and Trustee, their successors and assigns. It is further understood and agreed by Grantor that Beneficiary shall have the right to pledge and assign its rights, title and interests under this Deed of Trust and Security Agreement without obtaining the consent of Grantor.

19.     Unless the context shall otherwise indicate, words importing the singular shall include the plural, words importing persons shall include firms, associations and corporations, and vice versa, words importing the masculine, feminine and neuter gender shall be deemed to include all such genders, and the terms "hereof," "hereby," "hereunder" and "herein" shall refer to this Deed of Trust and Security Agreement.

20.     This Deed of Trust and Security Agreement may be executed in any number of counterparts, each of which shall be an original and constitute but one and the same.

SIGNATURE PAGE FOLLOWS

BOTTOM OF PAGE INTENTIONALLY BLANK

BOOK 1420 PAGE 93

IN WITNESS WHEREOF, OHIO VALLEY UNIVERSITY, INC. has caused this Credit Line Deed of Trust, Security Agreement and Fixture Filing to be executed and attested by their respective duly authorized representatives, on or prior to the date first above written.

OHIO VALLEY UNIVERSITY, INC.

By: _____
Its: President

ATTEST:

By: _____
Its: Secretary

Aug 22, 2007
987000.00001

CH893647.5                    13

STATE OF WEST VIRGINIA,
COUNTY OF WOOD, To- Wit:

       The foregoing instrument was acknowledged before me this 30th day of August 2007, by _James A. Johnson_, President of OHIO VALLEY UNIVERSITY, INC.

My commission expires _august 25, 2016_.

[NOTARIAL SEAL]

_Pamela M. Dishman_
Notary Public

Official Seal
Notary Public, State of West Virginia
Pamela M. Dishman
Ohio Valley University
1 Campus View Dr.
Vienna, WV 26105
My commission expires August 25, 2016

This Instrument Was Prepared By:
John C. Stump, Esquire
Steptoe & Johnson PLLC
707 Virginia Street
Charleston, WV 25301
August 30, 2007

JAMIE SIX
WOOD County 08:33:15 AM
Instrument No 544370
Date Recorded 09/05/2007
Document Type T/M
Book-Page 1449-70
Rec/Preserve $39.00 $3.00

CH893647.5         14

**EXHIBIT A – CAMPUS REAL PROPERTY**

BOOK **1449** PAGE **71**

### LEGAL DESCRIPTION - SOUTH CAMPUS

All those certain tracts or parcels of land situate in Parkersburg District, Wood County, West Virginia and being more particularly described as follows:

First Tract: Beginning at a stake at the southeast corner of the tract herein conveyed, which said stake is at the intersection of lands now or formerly owned by Graham Packing Company and Nesselrotte; thence N. 62°17' W. 247.7 feet to the center line of Jug Run Road; thence continuing N. 62°17' W. 2548.66 feet to a stake; thence N. 27°47' E. 890 feet to a stake; thence S. 60°37' E. 2566.93 feet to a stake; thence S. 12 W. 361.28 feet to the center line of said Jug Run Road; thence continuing S. 12° W. 485.72 feet to the place of beginning, containing 52.37 acres, more or less.

There is **excepted** therefrom a parcel heretofore conveyed to the State Road Commission by Deed of record in the Wood County Clerk's office in Deed Book No. 492, at page 362.

Second Tract: Beginning at the southeast corner of Chestnut Street and Charlotte Avenue, thence with the southerly line of Charlotte Avenue easterly 80 feet to a point on same; thence at right angles in a northeasterly direction across Charlotte Avenue and with the easterly line of Lots Nos. 87 and 106 of Andrews Addition to the northerly line of Forrest Avenue 490 feet; thence at right angles westerly with the northerly line of Forrest Avenue 50 feet, more or less, to a fence in the line of the Wentz property; thence with the easterly line of the Wentz property northerly 360 feet, more or less, to a point in the easterly line of Franklin Avenue and the southerly line of a tract heretofore conveyed by the Brookside Development Company to J. N. Boice by Deed dated July 16, 1931, and of record in the aforesaid Clerk's office in Deed Book No. 205, at page 126; thence S. 63°56' E. 1445 feet, more or less, to a point in the easterly line of said property; thence at right angles, southwesterly 429 feet to a point; thence at right angles northwesterly 145 feet to a point; thence S. 27°30' W. 951.8 feet to a point; thence southerly 330 feet to the northerly line of the property now owned by Roth; thence with the Roth line N. 63°15' W. 600 feet, more or less, to a stake in the easterly line of Lot No. 365; thence with the easterly line of Lots Nos. 365, 364, 363, 362, 361 and 360 in a northerly direction 713 feet, more or less, to a stake in the southeasterly corner of Lot No. 359; thence with the common line of Lots Nos. 359 and 360 across Edgewood Drive South and with the southerly line of Lots Nos. 372, 69, 68, 67, 578 feet, more or less, to Chestnut Street; thence with the easterly line of Chestnut Street northerly 155 feet to Charlotte Avenue, the place of beginning, containing forty (40) acres, more or less, together with all the right, title and interest of the parties to all of the intervening streets and 5 feet and 15 feet strips reserved, as indicated on a map of said property.

There is hereby **excepted** from this conveyance those certain parcels of real estate heretofore conveyed to other parties as follows: (1) A parcel of approximately four (4) acres to the Board of Education of the County of Wood, by Deed dated January 25, 1954, of record in the aforesaid Clerk's office in Deed Book No. 374, at page 133, and (2) Those certain lots known and numbered as Lots 67, 68, 69 and 372.

There is further **excepted** from this conveyance two parcels heretofore conveyed by the party of the first part to Ohio Valley College Investment Corporation, Inc., as follows: (1)

CH893647.5                                    15

11.76 acres by Deed dated January 4, 1973, recorded in Deed Book No. 616, at page 403 (included in said 11.76 acres is a smaller parcel measuring 59.2 feet by 146 feet conveyed to the party of the first part by Deed recorded in Deed Book No. 426, at page 296). (2) 5.82 acres by Deed dated January 4, 1973, and recorded in Deed Book No. 616, at page 406.

Third Tract: Being all of Lot No. Ten (10), containing four (4) acres and eighty (80) poles; Lot No. Eleven (11), containing four (4) acres and twenty (20) poles and Lot No. Twelve (12), containing four (4) acres and twenty (20) poles, of what is known as the John Cook Estate, Hill Land, and of record in the office of the Clerk of the County Commission of Wood County, West Virginia.

Fourth Tract: Parcel One: Beginning at a stone at center of the old County Road (sometimes called the Williamstown Road) at a corner of lands formerly owned by Olin V. Neal, being corner of Lot No. 7 of the Hardin Neal Estate, and running thence with the center of said road N. 16°30' E. 28.2 poles to a stake in the upper line of the said Hardin Neal; thence with said line S. 63°15' E. 100 poles to a stone; thence S. 16°30' W. 30 poles to a stone in the line of said Lot No. 7; thence with said line N. 62°37' W. 100 poles to the place of beginning, containing Eighteen (18) acres, more or less.

Parcel Two: Beginning at a stone in the northeast corner of the above mentioned tract, and running thence S. 63°15' E. 63 poles to a stone; thence S. 16°30' W. 30.63 poles to a stone and wire post; thence N. 62°27' W. 53 poles to a stone at the southeast corner of the above mentioned tract; thence N. 16°30' E. 30 poles to the place of beginning, containing ten (10) acres, more or less.

There is **excepted** from the above described real estate those two certain tracts of land, the first known as Ohio Valley College Addition to Vienna, Section "A", a plat of which is of record in the aforesaid Clerk's office in Plat Book No. 11, at page 40, and in Plat Book No. 12, at page 5, and a plat of a Re-division of a part thereof of record in Plat Book No. 12, at page 11, and the second known as Ohio Valley College Addition to Vienna, Section "B", a plat of which is of record in the aforesaid Clerk's office in Plat Book No. 12, at page 40, and that certain parcel situate on Thirteenth Avenue heretofore conveyed by the party of the first part unto Irene M. Taylor by Deed dated March 21, 1960, of record in the aforesaid Clerk's office in Deed Book No. 440, at page 312.

Fifth Tract: Beginning at an iron stake in the old fence line, thence S. 66-1/2°E. 99 feet to Jug Run Road; thence with said Jug Run Road 2 calls, S. 41°W. 31 feet and S. 31°W. 198 feet to a point; thence leaving said road and running in a westerly direction 16-1/2 feet, more or less, to the old fence line, being in the easterly line of lands now owned by the first party; thence with said old fence line N. 11°42' E. 237 feet to the place of beginning, containing one-fourth (1/4) acre, more or less, and being a small triangular parcel of land carved out of Parcel Two as described in that certain Deed from Graham Packing Company, Inc., a corporation, to D. P. Boord and Dixie Boord, husband and wife, which said Deed was dated the 9th day of October, 1953, of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book No. 371, at page 527.

Being the same property conveyed to Wood County Development Authority, a public corporation, by Ohio Valley College, Incorporated, a West Virginia corporation, by Deed dated March 21, 1978, and of record in said Clerk's office in Deed Book No. 701, at page 266.

There is **excepted** from the aforesaid tracts of land the following:

(1) Beginning at a point bearing N. 18°29' E. 152.53 feet from the common line of property of Wood County Development Authority and property of the Board of Trustees of the Grand Lodge of Ancient, Free and Accepted Masons of West Virginia; thence N. 71°31' W. 50 feet to a one inch pipe; thence N. 18°29' E. 150 feet to a one inch pipe; thence S. 71°31' E. 100 feet to a one inch pipe; thence S. 18°29' W. 150 feet to a one inch pipe; and thence N. 71° 31' W. 50 feet to the place of beginning, containing 0.344 acre, more or less.
Title reference - Deed Book No. 701, at page 266.

(2) A right of way of ingress and egress to and from the aforesaid parcel to the Masonic Home property, and for the installation, maintenance, inspection or replacement of water lines and appurtenances used in connection with a water tank to be located upon the aforesaid parcel, said right of way to be 25 feet in width, 12-1/2 feet on either side of a center line extending from the aforesaid common line of Wood County Development Authority and Masonic Home property, N. 18°29' E. 152.53 feet, more or less, to the southerly line of the 0.344 acre parcel.

(3) An easement for the occasional flowage of overflow and excess waters, extending from the 0.344 acre parcel and following the natural drainage contours of the land and natural watercourse in a southeasterly direction to Little Pond Run.

(4) A right of way for ingress and egress and for the installation, maintenance, inspection and replacement of water lines and appurtenances used in connection with a water tank, or tanks, to be located upon said 0.344 acre parcel of land. Said right of way shall be approximately 25 feet in width plus additional widths as may be necessary for cuts and fills and shall extend from said 0.344 acre parcel in a general northeasterly direction to a roadway designated as Aurora Drive on a topographical map prepared for Ohio Valley College, and continuing thence generally with Aurora Drive around the easterly side of a knoll and thence to 12th Street.

(5) The tract or parcel of land containing 57.156 acres, more or less, conveyed by Wood County Development Authority to Ohio Valley College, Inc. by a Deed dated July 26, 1997 and of record in said Clerk's office in Deed Book No. 972, at page 549.

(6) The tract or parcel of land and easements conveyed by Wood County Development Authority, and others, to Agape Housing, Inc. and the City of Vienna by a Deed dated May 6, 1985 and of record in said Clerk's office in Deed Book No. 819, at page 253.

(7) Two (2) tracts or parcels of land containing .08 ac and .168 ac and easements conveyed by the Wood County Development Authority to S.J. Ventures, Inc. by a Deed dated January 8, 1987 and of record in said Clerk's office in Deed Book No. 844, at page 186.

## LEGAL DESCRIPTION - NORTH CAMPUS

All that certain tract or parcel of land situate in the City of Vienna, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

Beginning at a concrete monument (found) at the southerly corner of Florence A. Atkinson (reference Deed Book 571, page 488).

Thence, with the interior of the parent tract, twelve (12), courses and distances, S. 89° 18' 25" E. 203.40 feet to a point,

S. 51° 30' 05" E. 74.00 feet to a point,

N. 38° 29' 55" E. 70.00 feet to a point,

S. 51° 30' 05" E. 98.23 feet to a point,

S. 07° 12' 00" E. 268.41 feet to a point in asphalt driveway, said point being N. 79° 37' 42" E.,

150.22 feet from the northeasterly corner of Ohio Valley College, Inc. existing Building, formerly Saint Joseph's Seminary Main Building,

S. 83° 26' 40" W. 328.90 feet to a point,

S. 06° 30' 05" E. 23.86 feet to a point,

S. 83° 31' 00" W. 120.00 feet to a point,

N. 06° 30' 05" W. 43.03 feet to a point,

S. 83° 29' 55" W. 275.50 feet to a point, said point being N. 80° 28' 24" W. 105.03 feet from the northwesterly corner of Ohio Valley College, Inc. Existing Building, formerly Saint Joseph's Seminary Main Building,

N. 06° 30' 05". 190.00 feet to a point,

N. 59° 11' 10" E. 381.92 feet to the point of beginning and containing 5.110 acres more or less as surveyed by James DeBrular.

Being part of the same property (Deed Parcels 6, 8 and 9), conveyed to Ohio Valley College, Inc. by Most Reverend Bernard W. Schmitt, Bishop, by a Deed dated November 17, 1997 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia in Deed Book No. 975, page 598.

Together with a nonexclusive easement for ingress to and egress from said tract or parcel of land over and across all roads and driveways now or hereafter located on the property now owned by Ohio Valley College, Inc.

## TRACT 2

All those certain tracts or parcels of land situate in Parkersburg and Vienna Districts, Wood County, West Virginia, and being more particularly bounded and described as follows:

### PARCEL NO. 1

BEGINNING at an iron pin in an old original survey (described in deed from O. B. Wiles, et ux. to C. C. Bee, dated December 31, 1915, recorded in the County Clerk's office of Wood County, West Virginia, in Deed Book No. 165, at page 515) at the extreme northwesterly end of a strip of land purchased by Bee from said O. B. Wiles; running thence S. 64 ½ E. 220 poles to a stake; thence S. 10 ½ W. 11 1/3 poles, more or less, to the original line in a former survey above referred to; thence N. 64 ½ W. 223.5 poles, more or less, to a stake on the bank of a run, in the line of the original survey; thence N. 27 E., with the line of the original survey, 11 1/3 poles, more or less, to an iron stake or pin to the place of beginning. (The southerly line of the old survey having been changed); and being the same real estate conveyed to James B. Wiblin by C. C. Bee, widower, by deed dated November 15, 1945, recorded in the County Clerk's office of Wood County, West Virginia, in Deed Book No. 275, at page 124.

### PARCEL NO. 2

BEGINNING at a concrete monument corner to lands of D. W. McConaha in the line of R. E. Snyder, and 28 feet, more or less, from the bottom of a steep bank across a run; thence South 59° 15' West 186.96 feet to a concrete monument; thence North 08° 29' East

184.00 feet to a concrete monument; thence South 76° 27' East 145.97 feet to a large oak tree 3.2 feet in diameter; thence South 09° 05' West 52.86 feet to the place of beginning, and being all the remaining land in a Tract described in Deed Book No. 374, at page 560, and also described as Tract P-1 on the Parkersburg District Tax Map Block 110.

### PARCEL NO. 3

BEGINNING at a stone in the line of I. S. Dotson and H. Dixon and running thence in a westerly direction 40 rods to a stone in the line of I. S. Dotson and Godall Dare; thence in a northerly direction with said line 20 rods to a stone in said line; thence in an easterly direction 40 rods to a stone in said first line; thence with said first line in a southerly direction 20 rods to the place of beginning.

### PARCEL NO. 4

BEGINNING at a point in the northeasterly corner of the tract of which the real estate herein described is a part, said beginning point being also the northwesterly corner of a tract owned by the heirs of Sally Kenney and in a line of a tract now or formerly owned by Nesselroade; thence running in a northwesterly direction with the line of Nesselroade, 157.5 feet to a point in the easterly line of a tract formerly owned by Atkinson; thence running in a southwesterly direction with the line of Atkinson and a tract formerly owned by Jameson, 330 feet, more or less, to a point, the southeasterly corner of said Jameson tract; thence running in a northeasterly direction, 157 feet, more or less, to a point; the southwesterly corner of said Kenney tract; thence with said Kenney line in a northeasterly direction, 20 poles to the place of beginning; and being a part of a tract of 1 acre 133 square rods lying west of and abutting the lands of the said Sally Kenney heirs on the east and the lands formerly owned by Jameson and Atkinson on the west; and being a part of the same real estate conveyed to the said Leslie P. McConaha by Ernest Ogden by deed dated February 24, 1954, recorded in the Office of the Clerk of the County Court of Wood County, West Virginia, in Deed Book No. 374, page 560.

### PARCEL NO. 5

BEGINNING at a stone in the Grogg and Lininger line in the rear line of the McHugh Farm, corner to land of Sarah A. Davis, and running thence N. 66-1/2 W. along the line of said land of Sarah A. Davis, 128 poles to a stake; thence at right angles to the line of Sarah A. Davis (crossing the McHugh-Tavenner line at right angles) 43.82 poles, more or less, to the lands of Fischer (formerly conveyed to James Tavenner, et al. by deed dated January 27, 1898, recorded in Deed Book No. 95, at page 398); thence along the rear line of the 125-acre tract of which Isaac Tavenner died seized, to the northeast corner of lands conveyed to C. H. Shattuck, J. M. Jackson, Jr., and L. N. Tavenner by William McHugh, et al. by deed dated March 27, 1901, recorded in Deed Book No. 114, page 3; and along the rear line of said lands so conveyed by said McHugh to Shattuck, et al. to the place of beginning, being the same real estate granted and conveyed unto the said parties of the first part by Fred L. Morlan, et al., by deed dated March 19, 1958, recorded in the Office of the Clerk of the County Court of Wood County, West Virginia, in Deed Book No. 418, at page 485.

### PARCEL NO. 6

BEGINNING at a point in the dividing line between the William Bel Farm and the Frank Jenkins and Isaac Tavenner farms at a point 2596 feet N. 63° 24' W. from the southerly corner of the William Bell farm and running thence N. 47° 31' E. 337.5 feet, more or less, to a stake; thence S. 63° 17' E. 2400 feet, more or less, to a point in the back or easterly line

of the William Bell farm; thence with the back or easterly line of the William Bell farm, S. 13° 52' W. 337-1/2 feet, more or less, to a point; the southerly corner of the William Bell farm; thence N. 63° 24' W. with the southerly line of the William Bell farm 2596 feet, more or less, to the place of beginning.

## PARCEL NO. 7

BEGINNING at a point which is the southeast corner of Lot No. 106 of Shattuck, Jackson, Tavenner & McHugh's Addition as shown on plat of said Addition of record in the Office of the Clerk of the County Court of Wood County, West Virginia, in Plat Book No. 2, pages 6 and 7; thence N. 26° 45' E. along the line of said Lot No. 106 and Lot No. 56 of said Addition, 22.27 poles to a stake, corner to said Lot No. 56; thence S. 60° 45' E. 10.82 poles to a stake; thence N. 34° E. 10.98 poles to a stake; thence S. 63° 22' E. 14.69 poles to a stake; thence N. 34° E. 10.98 poles to a stake; thence S. 63° 22' E. 51.13 poles to a stone; thence S. 26° 48' W. 43.62 poles to a stone in a line of lands now or formerly owned by Sarah A. Davis; thence N. 63° 22' W. 78.22 poles to the point of beginning.

## PARCEL NO. 8

BEGINNING at a sycamore on the common line between this land and the land of William Bell; thence S. 26° 29' W. 362 feet to a stake in the dividing line between this land and that of L. N. Tavenner et al. and a corner to lands of James Tavenner; thence with said dividing line S. 63° 31' E. 3,033 feet to a stake in the old line and on the south by a small run and near a large white oak marked fore and aft (old marks); thence with said line N. 8° E. 382 feet to a stake near a white oak and hickory pointers, a corner to land of William Bell; thence with the aforesaid common line with Bell N. 63° 31' W. 3000 feet to the beginning.

Excepting and reserving from the above described tract, however, a certain parcel bounded and described as follows:

BEGINNING at a point, the northwesterly corner of the tract hereinbefore described, running thence easterly with the common line of said tract and the line of B. F. Jameson tract, 200 feet to a point; thence running in a southerly direction to a point in the southerly line of the tract hereinbefore described, said point being 200 feet easterly from the southwesterly corner of the tract hereby conveyed; thence running with the southerly line of the tract hereby conveyed, in a westerly direction, 200 feet to the southwesterly corner of said tract; thence running with the westerly line of said tract in a northerly direction, 362 feet, more or less, to the place of beginning.

## PARCEL NO. 9

BEGINNING at an iron pin at the foot of the hill in the line of an old cross fence just back of the old Ben Davis Orchard, said beginning point being a common corner to the tract of land of 17.21 acres hereby conveyed and another adjoining 18.65 acre tract as shown on a plat of acreage made of the William Bell Estate by L. G. Merrill, Civil Engineer, in July 1936; thence S. 63° 24' E. and with the dividing line between said two tracts, 2,510 feet to a point; thence N. 13° 52' E. 321.5 feet to a point, common corner to the tract hereby conveyed and another 15.87 acre tract adjoining; thence N. 63° 24' W. and with the dividing line between the said last two mentioned tracts, 2,285 feet to an iron pin in the line of the old cross fence, as aforesaid; thence S. 52° 52' W. 348.36 feet to the place of beginning.

Excepting and reserving from the above described tract, a certain tract or parcel located on the northwesterly end thereof, bounded and described as follows:

BEGINNING at the northwesterly corner of the tract hereinbefore described; thence running S. 23° 24' E. 310 feet to a point; thence running S. 26° 36' W. 312.8 feet to a point in the common line of the above described tract and a tract owned by B. F. Jameson; thence with the Jameson tract, N. 63° 24' W. 467 feet, more or less, to the southwesterly corner of the tract hereinbefore described; thence with the westerly line of said tract, N. 53° 30' E. 348.38 feet to the place of beginning.

THERE IS ALSO EXCEPTED AND RESERVED from said tracts or parcels of land that part or portion thereof conveyed unto the St. Joseph Hospital by the Diocese of Wheeling-Charleston by the terms of a deed dated May 21, 1991 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book No. 896, at page 411.

There is further excepted and reserved therefrom all that certain tract or parcel of land situate in the City of Vienna, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

Beginning at a concrete monument (found) at the southerly corner of Florence A. Atkinson (reference Deed Book 571, page 488).

Thence, with the interior of the parent tract, twelve (12), courses and distances,
S. 89° 18' 25" E. 203.40 feet to a point,
S. 51° 30' 05" E. 74.00 feet to a point,
N. 38° 29' 55" E. 70.00 feet to a point,
S. 51° 30' 05" E. 98.23 feet to a point,
S. 07° 12' 00" E. 268.41 feet to a point in asphalt driveway, said point being N. 79° 37' 42" E.,
150.22 feet from the northeasterly corner of Ohio Valley College, Inc. existing Building, formerly Saint Joseph's Seminary Main Building,
S. 83° 26' 40" W. 328.90 feet to a point,
S. 06° 30' 05" E. 23.86 feet to a point,
S. 83° 31' 00" W. 120.00 feet to a point,
N. 06° 30' 05" W. 43.03 feet to a point,
S. 83° 29' 55" W. 275.50 feet to a point, said point being N. 80° 28' 24" W. 105.03 feet from the northwesterly corner of Ohio Valley College, Inc. Existing Building, formerly Saint Joseph's Seminary Main Building,
N. 06° 30' 05". 190.00 feet to a point,
N. 59° 11' 10" E. 381.92 feet to the point of beginning and containing 5.110 acres more or less as surveyed by James DeBrular.

Being part of the same property (Deed Parcels 6, 8 and 9), conveyed to Ohio Valley College, Inc. by Most Reverend Bernard W. Schmitt, Bishop, by a Deed dated November 17, 1997 and of record in the office of the Clerk of the County Commission of Wood County West Virginia in Deed Book No. 975, page 598.

Together with a nonexclusive easement for ingress to and egress from said tract or parcel of land over and across all roads and driveways now or hereafter located on the property now owned by Ohio Valley College, Inc.

The tracts or parcels of land hereinabove described as "Tract No. 1" and "Tract No. 2" are a part or portion of the same property conveyed unto Ohio Valley College, Inc. by Most Reverend Bernard W. Schmitt, Bishop, by a Deed dated November 17, 1997 and of record in said Clerk's office in Deed Book No. 975, at page 598.

## TRACT 3

### PARCEL NO. 1

All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a stake in the County Road and which stake is located at the Northeast corner of property owned by the Ohio Valley College, Inc.; thence S. 60°37' E. along the line of the Ohio Valley College property, 2420.93 feet to a point; thence N. 28°42' E. 461.05 feet; thence N. 61°04' W. 176.02 feet to a stake; thence N. 26°21' E. 448.48 feet to a stake; thence S. 62°38' E. 2318 feet to a stake; thence S. 12°W. 1040 feet to the point of beginning, containing 52 acres, more or less and being a part of the same tracts or parcels of land conveyed unto S.J. Ventures, Inc., a West Virginia corporation by St. Joseph's Hospital of Parkersburg, a non-profit West Virginia corporation, by a deed dated October 8, 1985 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia in Deed Book No. 825, at page 362.

**EXCEPTING AND RESERVING THEREFROM** those certain tracts or parcels of land described as containing 0.011 acres, 0.012 acres and 0.035 acres, more or less in a deed dated March 24, 1987, and of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book No. 847, at page 24, from S.J. Ventures, Inc., a West Virginia corporation to D. E. Kniska and T. A. Kniska, his wife.

**ADDITIONALLY EXCEPTING AND RESERVING THEREFROM** all that certain tract or parcel of land containing 5.115 acres, together with all appurtenant easements described in and covered by a Ground Lease from S.J. Ventures, Inc. to West Virginia Rehabilitation Services, Inc., a Pennsylvania corporation, dated December 1, 1986 and of record in said Clerk's office in Deed Book No. 842, at page 658. This conveyance is also being made subject and subordinate to all of the rights of the Lessee pursuant to the terms of the Ground Lease described in the preceding sentence.

Said tract or parcel of land described as, "Parcel No. 1" is a part or portion of property conveyed to Ohio Valley College, Inc. by S.J. Ventures, Inc. and St. Joseph's Hospital of Parkersburg by a Deed dated February 4, 1998 and of record in said Clerk's office in Deed Book No. 978, at page 134. This Deed contains the following provision:

"By its acceptance of this deed, the party of the second part hereby assumes all of the obligations of S.J. Ventures, Inc., one of the parties of the first part to maintain an easement area appurtenant to said hereinabove described "Tract 1" as set forth in Section 28 of that Certain Ground Lease dated December 1, 1986 and of record in said Clerk's office in Deed Book No. 842, at page 658, from S.J. Ventures, Inc., as Lessor to West Virginia Rehabilitation Services, Inc., as Lessee."

## PARCEL NO. 2

All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a common corner to the properties owned by S.J. Ventures, Inc. and D. E and T. A. Kniska, as shown on the "Plat Showing The Land Acquired by S.J. Ventures, Inc. From Ohio Valley College, Parkersburg District, Wood County,", prepared by Rude and Associates, Inc., said plat being of record in said Clerk's office; thence with the property line between S.J. Ventures, Inc. and D. E. and T. A. Kniska S. $12°10'20''$ W. 54.23 feet to the beginning point; thence S. $11°08'10''$ E. 22.61 feet to a point on the property line between S.J. Ventures, Inc. and D. E. and T. A. Kniska; thence N. $66°10'40''$ W. 9.14 feet; thence N. $12°10'20''$ E. 18.89 feet to the place of beginning, and containing 0.002 acre, and designated as "Tract B" on a plat attached to the hereinafter described deed dated March _____, 1987, and being the same tract or parcel of land conveyed unto S.J. Ventures, Inc., a West Virginia corporation, by D. E. Kniska and T. A. Kniska, his wife, by a deed dated March _____, 1987 and of record in said Clerk's office.

## PARCEL NO. 3

All those two (2) certain tracts or parcels of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

TRACT I: BEGINNING at the common corner to property now or formerly owned by D. E. and T. A. Kniska and the Wood County Development Authority, thence with the following bearings and distances: South $66°1'40''$ East, 61.00 feet to the westerly right of way line of Wood County Route 4; South $47°15'31''$ West, 15.40 feet with said right of way line; South $33°12'40''$ West, 76.61 feet with said right of way line; North $36°29'11''$ West, 17.18 feet; with a curve to the right having a radius of 185 feet and a chord of North $34°9'31''$ West, 15.03 feet; North $12°10'20''$ East, 74.58 feet to the beginning point, and containing 0.080 acres, more or less.

TRACT II: BEGINNING at the common corner to properties now or previously owned by S.J. Ventures, Inc., a West Virginia corporation, D. E. and T. A. Kniska and the Wood County Development Authority; thence with the following bearings and distances: South $12°10'20''$ West, 73.12 feet; South $12°10'20''$ Wes, 74.85 feet; with a curve having a radius of 185 feet and a chord of North $21°41'42''$ West, 65.12 feet; North $11°30'57''$ West, 126.62 feet to the property line of S.J. Ventures, Inc., and the Wood County Development Authority; South $63°41'43''$ East, 90.31 feet with said property line to the beginning point, and containing 0.168 acres, more or less, and being more fully described on the Plat attached to the hereinafter described deed dated January 8, 1987 and of record in said Clerk's office in Deed Book No. 844, at page 186.

Said Tract I and Tract II are the same tracts or parcels of land conveyed unto S.J. Ventures, Inc., a West Virginia corporation, by the Wood County Development Authority, a public corporation, by a deed dated January 8, 1987 and of record in said Clerk's office in Deed Book No. 844, at page 186.

**THERE IS HEREBY CONVEYED TOGETHER WITH** said Tract I and Tract II the easement which was also conveyed unto S.J. Ventures, Inc., a West Virginia

corporation, by the terms of the deed dated January 8, 1987 described in the preceding paragraph and which was described therein as Tract III, as follows:

TRACT III: BEGINNING at the common corner to properties now or previously owned by S.J. Ventures, Inc., and the Wood County Development Authority, thence with the following bearings and distances, South 11°30' 57" East, 126.62 feet with a curve to the left having a radius of 185 feet and a chord of South 21°41' 42" East, 65.12 feet: South 57°23' 57" West, 33.69 feet; North 78°41' 24" West, 15.30 feet; North 13°19' 28" West, 39.05 feet; North 00°23' 44" East, 151.70 feet; North 11°30' 57" West, 12.50 feet to said property line: South 63°41' 43" East, 5.00 feet with said property line to the beginning point, and containing 0.107 acres, more or less, and being more fully described on a Plat attached to the hereinabove described deed dated January 8, 1987 and of record in said Clerk's office in Deed Book No. 844, at page 186.

There is expressly excepted herefrom that certain easement and right of way previously granted by The Wood County Development Authority and Ohio Valley College, Inc., unto S.J. Ventures, Inc. by deed dated the 3rd day of November, 1986 and of record in said Clerk's office in Deed Book No. 842, at page 651, more fully described as follows:

SITUATE AND BEING in the District of Parkersburg, County of Wood and State of West Virginia, more particularly described as follows:

BEGINNING at a reference point at the common point of properties owned by S.J. Ventures, Inc., D. E. and T. A. Kniska, and the Wood County Development Authority; thence North 63°41' 43" West, 39.67 feet with the property line between S.J. Ventures, Inc., and the Wood County Development Authority, to the true beginning point; thence with the following bearings and distances; South 11°30' 57" East, 95.35 feet, with a curve to the left having a radius of 145 feet and a chord of South 23°59' 5" East, 62.78 feet; South 36°29' 11" East, 3.38 feet to the westerly right of way line of Wood County Route 4; South 34°28' 52" West, 42.31 feet with said right of way line; North 36°29' 11" West, 17.18 feet, with a curve to the right having a radius of 185 feet and a chord of North 24°1' 21" West, 79.86 feet; North 11°30' 57" West, 126.62 feet to the property of S.J. Ventures, Inc.; South 63°41' 43" East, 50.64 feet with said property line to the beginning point, and containing 0.175 acres, more or less.

**PARCEL NO. 4**

All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a hub located at the easterly end of 14th Street in the City of Vienna, thence S. 61°15' E. 1273 feet to a hub located on the line of a tract of land recently acquired by the St. Joseph's Hospital of Parkersburg from Harry F. Davis and Florence B. Davis by deed dated the 16th day of June, 1966, and of record in said Clerk's office in Deed Book No. 518, at page 40; thence along the line of said St. Joseph's Hospital of Parkersburg property so acquired N. 27°30' E. 430.5 feet to another hub; thence N. 62°W. 1247 feet, more or less, to a hub located in the westerly end line of 15th Street in the City of Vienna; thence S. 31°45' W. 416.9 feet to the point of beginning, containing 12.40 acres, more or less, and being also a part or portion of the property conveyed unto S.J. Ventures, Inc., a West Virginia corporation, by the terms of the hereinabove described deed dated October 8, 1985.

**TRACT 4**

CH893647.5                                            24

All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a point in a stream, said point being located on the common property line between Tract "K" and Tract "E", 360.24 feet in a N. 65 degrees 56 minutes 37 seconds W. direction from a concrete monument at the northeasterly boundary of Tract "E"; thence N. 65 degrees 56 minutes 37 seconds W., 1,241.70 feet with said common line to an iron pipe, passing an iron pipe reference pipe located on said line 7.00 feet from the beginning and located on the bank of the stream; thence N. 24 degrees 03 minutes 23 seconds E. 188.00 feet to an iron pipe located in the common line between Tract "K" and Tract "8", said point being the northwesterly corner of the 5.3059 Acre Tract herein described; thence S. 65 degrees 56 minutes 37 seconds E. 1,217.00 feet to a point in the stream located in the common line between Tract "k" and Tract "8" and passing an iron pipe reference pipe at 1,207.00 feet; thence S. 16 degrees 33 minutes 18 seconds W. 189.62 feet to the point of beginning, containing 5.3059 acres, more or less, and being the same tract or parcel of land conveyed unto St. Joseph's Hospital of Parkersburg, a West Virginia non-profit corporation, by the Most Reverend Bernard W. Schmitt, Bishop of the Roman Catholic Diocese of Wheeling-Charleston by a Quit-Claim Deed dated November 28, 1994 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia in Deed Book No. 938, at page 741.

Said tracts or parcels of land hereinabove described as, "Tract No. 3" and, "Tract No. 4" are the same tracts or parcels of land conveyed unto Ohio Valley College, Inc. by S.J. Ventures, Inc. and St. Joseph's Hospital of Parkersburg by a Deed dated February 4, 1998 and of record in said Clerk's office in Deed Book No. 978, at page 134.

## LEGAL DESCRIPTION - SNYDER ACTIVITY CENTER

All that certain lot, tract or parcel of land situate, lying and being in the District of Parkersburg, County of Wood and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at an iron pin in the northerly line of Jug Run (Briscoe) said point being the southeasterly property corner of Kenneth McVay, of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book No. 804, at page 385, said point also being the northeast property corner of the parcel to be herein described, said parcel previously described in Deed Book No. 848, at page 779; thence along the north line of the above mentioned road, South 39° 15' 01" West 203.03 feet to a point; thence along the north line of said road, South 37° 15' 01" West 206.90 feet to a pk nail; thence leaving said road North 66° 01' 40" West 40.87 feet to a drill hole; thence South 47° 15' 31" West 15.40 feet to a drill hole; thence North 55° 44' 15" West 41.74 feet to an iron rod; thence North 11° 08' 10" West 64.73 feet to a drill hole; thence North 12° 10' 20" East 26.44 feet to an iron rod; thence North 10° 02' 43" East 114 feet to an iron rod; thence South 79° 57' 17" East 11.03 feet to an iron rod; thence North 09° 25' 17" East 211.98 feet to an iron pipe; thence along the southerly line of the above mentioned McVay property South 67° 16' 43" East 301.77 feet to the place of beginning, containing 1.85 acres, as shown on a plat thereof prepared by James L. Debrular, LLS, attached to a Deed of record in said Clerk's office in Deed Book No. 897, at page 293.