UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: | ) Case No. 5:22-bk-00056 |
| | ) |
| Ohio Valley University, Inc., | ) **Motion for Relief From Automatic Stay** |
| | ) |
| Debtor. | ) |
| | ) |
| | ) |

UMB Bank, N.A., in its capacity as successor master trustee (the "Master Trustee" or "Trustee") under that certain Master Trust Indenture dated as of August 31, 2007 (the "Master Indenture"), acting by and through its undersigned counsel, hereby submits its *Motion for Relief from Automatic Stay* (this "Motion") seeking an order from the Court pursuant to 11 U.S.C. § 362(d); Fed. R. Bankr. P. 4001, 9013 and 9014, and N.D.W.V. LBR 4001-1 terminating the automatic stay because the debtor Ohio Valley University, Inc. (the "Debtor" or "OVU") does not have equity in the Trustee's collateral and the collateral is not necessary for an effective reorganization. The Trustee further requests that the Court waive the 14-day stay to orders granting relief from the automatic stay made applicable by Fed. R. Bankr. P. 4001(a)(3).

### FACTUAL BACKGROUND

1. The Debtor filed its *Voluntary Petition* for relief (the "Petition") on February 17, 2022 (the "Petition Date"). (Doc. No. 1.)

**The Bond Documents and Collateral**

2. The Master Trustee is the master trustee under that certain Master Trust Indenture dated effective as of August 31, 2007 (as supplemented, the "Master Indenture"), by and between United Bank, as the prior master trustee, and OVU. A true and correct copy of the Master Indenture is attached as **Exhibit A**.

3. Pursuant to the Master Indenture, on August 31, 2007, OVU issued its Taxable Refunding Bonds, Series 2007 A, in the aggregate principal amount of $6,750,000 (the "Series A Bonds").

4. Receipt of the Series A Bonds proceeds is evidenced by, among other documents, the Cross-Receipt for Bonds and Bond Proceeds dated August 31, 2007 (the "Series A Receipt"). A true and correct copy of the Series A Receipt is attached as **Exhibit B**.

5. Further, pursuant to the Master Indenture, on August 31, 2007, OVU issued its Taxable Refunding Bonds, Series 2007 D, in the original principal amount of $1,715,000 (the "Series D Bonds").

6. Receipt of the Series D Bonds proceeds is evidenced by, among other documents, the Cross-Receipt for Bonds and Bond Proceeds dated August 31, 2007 (the "Series D Receipt"). A true and correct copy of the Series D Receipt is attached as **Exhibit C**.

7. UMB is also the successor bond trustee (the "Bond Trustee" and together with the Master Trustee, the "Trustee") under that certain Trust Indenture dated effective as of August 31, 2007 (the "Series B Indenture"), pursuant to which the County Commission of Wood County issued its West Virginia Tax Exempt Subordinate Refunding Revenue Bonds (Ohio Valley University, Inc. Project) Series 2007 B, in the aggregate principal amount of $7,165,000 (the "Series B Bonds"). A true and correct copy of the Series B Indenture is attached as **Exhibit D**.

8. UMB is also the successor Bond Trustee under that certain Trust Indenture dated effective as of August 31, 2007 (the "Series C Indenture") pursuant to which the Wood County (West Virginia) Building Commission issued its Tax-Exempt Subordinate Refunding Revenue

Bonds (Ohio Valley University, Inc. Project) Series 2007 C (the "Series C Bonds" and together with the Series B Bonds, the "Tax Exempt Bonds") in the aggregate principal amount of $2,150,000. A true and correct copy of the Series 2007 C Trust Indenture is attached as **Exhibit E**.

9.   The Series A Bonds, Series D Bonds, and the Tax Exempt Bonds are collectively referred to as the "Bonds" and the Master Indenture, Series B Indenture, Series C Indenture and any documents related thereto or referenced therein are referred to as the "Bond Documents".

10.   As described in the Master Indenture, OVU obtained a line of credit from United Bank in the maximum principal amount of $200,000 (the "Line of Credit").

11.   Pursuant to the terms of the Master Indenture, the Line of Credit is on a parity with the Series A Bonds.

12.   The Line of Credit matured by its terms on March 8, 2021, which was extended to July 15, 2021 (the "Line of Credit Maturity"), pursuant to the terms of that certain First Amendment to Forbearance Agreement dated June 7, 2021 (the "Forbearance Agreement"). A true and correct copy of the Forbearance Agreement is attached as **Exhibit F**.

13.   As described in the Master Indenture, as security for the Obligations as that term is defined in the Master Indenture, OVU pledged, assigned, conveyed, transferred and granted a first priority security interest in, general lien upon and right of set-off against:

    a.   All of OVU's Gross Receipts, Accounts, Bank Accounts, General Intangibles and all Related Rights;

b.  All moneys and securities held under the Master Indenture, including, without limitation, moneys and securities held in the funds and accounts established under the Master Indenture; and

c.  All proceeds, cash proceeds, cash equivalents, products, replacements, additions, and improvements to, substitutions for, and accessions of any and all property described in (a) and (b) (collectively, the "Campus Personal Property").

14. The Trustee's interest in the Personal Property is perfected by the following UCC-1 financing statements duly filed with the West Virginia Secretary of State:

a.  Document No. 200700089186, filed on September 4, 2007 (the "First UCC")[1] a true and correct copy of which is attached as **Exhibit G**; and

b.  Document No. 2019E061300021, filed on June 13, 2019 (the "Second UCC") a true and correct copy of which is attached as **Exhibit H**;

15. Repayment of the Line of Credit and other Obligations as that term is defined in the Master Indenture is secured by, among other things, that certain Credit Line Deed of Trust, Security Agreement and Fixture Filing dated as of August 31, 2007 (the "Campus Deed of Trust") providing for, among other things, a lien on the "Campus Real Property" as that term is defined in the Campus Deed of Trust. A true and correct copy of the recorded Campus Deed of Trust is attached as **Exhibit I**.

16. The Campus Deed of Trust was recorded with the Clerk of the County Commission

---

[1] A public finance UCC-1 is valid for a period of 40 years pursuant to W. Va. Code § 46-9-515(b).

of Wood County in Trust Deed Book 1449, at page 70.

17. OVU is the owner of the Campus Real Property, which, together with the improvements thereon, has been operated at all relevant times as an undergraduate university.

18. The Campus Deed of Trust creates a first priority lien on and security interest in all of OVU's right, title and interest in and to the Campus Real Property, together with all other personal property owned by OVU.

19. Repayment of the Obligations is further secured by that certain Deed of Trust and Assignment of Rents and Leases dated as of August 31, 2007 (the "Coal Deed of Trust"), providing for, among other things, a lien on real property and coal reserves that OVU owns in Marshall County, West Virginia (the "Coal Reserves"). A true and correct copy of the Coal Deed of Trust is attached as **Exhibit J**.

20. The Coal Deed of Trust was recorded with the Clerk of the County Commission of Marshall County in Book 809 on page 469.

21. OVU is the owner of the Coal Reserves.

22. The Coal Deed of Trust creates a first priority lien on and security interest in all of OVU's right, title and interest in and to the Coal Reserves.

23. Repayment of the Obligations is further secured by that certain Assignment of Payment Rights Agreement dated June 7, 2021 (the "Assignment Agreement") and that certain Security Agreement dated June 7, 2021 (the "Security Agreement" and together with the Assignment Agreement, the "Assignment"). True and correct copies of the Assignment

Agreement and the Security Agreement are attached as **Exhibits K** and **L**.

24. Pursuant to the Assignment, OVU granted the Trustee a first priority security interest in and to as-extracted collateral, inventory, general intangibles, supporting obligations, and the right to payment of revenue with respect to certain coal rights (the "Assignment Personal Property" and together with the Campus Real Property, the Campus Personal Property and the Coal Reserves, the "Collateral").

25. The practical effect of the Trustee's security interest in the Collateral is that the Trustee has a security interest in substantially all of OVU's assets.

26. The Trustee's interest in the Assignment Personal Property is perfected by a UCC-1 financing statements duly filed with the West Virginia Secretary of State as Document No. 2021E06170072, filed on June 17, 2021 ("Third UCC"). A true and correct copy of the Third UCC is attached as **Exhibit M**.

**Default**

27. As described in a Demand and Notice of Default dated November 27, 2019 (the "Notice of Default") OVU has failed to make all principal and interest payments pursuant to the Bond Documents as they become due since September 2019 (the "Payment Default"). A true and correct copy of the Notice of Default is attached as **Exhibit N**.

28. The Forbearance Period, as that term is defined in the Forbearance Agreement, terminated on July 15, 2021.

29. OVU has failed to pay the amounts due and owing pursuant to the Line of Credit

on or before the Line of Credit Maturity (the "Line of Credit Default").

30. Upon information and belief, on or around December 1, 2021, OVU canceled its insurance policy insuring the Campus Real Property, among other property, in violation of the Bond Documents (the "Insurance Default"), leaving the Campus Real Property at risk for loss of damage and placing the value of the Trustee's collateral at risk.

31. Upon information and belief, on or around January 5, 2022, OVU ceased operations as an undergraduate university (the "Operational Default" and together with the Payment Default, the Insurance Default and the Line of Credit Default, the "Events of Default").

32. Pursuant to the Forbearance Agreement, OVU acknowledged the existence of an event of default under the Bond Documents and waived its rights under the Master Indenture, if any, to written notice of any Specified Defaults, as that term is defined in the Forbearance Agreement, and to any applicable cure period under the Master Indenture.

33. OVU has failed to cure the Events of Default, and the Events of Default are continuing.

**Outstanding Amount Due and Owing**

34. As a result of the Events of Default, principal and interest in the amount of **$16,096,235.69**, is due and owing by OVU to the Trustee pursuant to the Bond Documents as of the Petition Date, without defense, offset, recoupment or counterclaim (the "Indebtedness") as follows:

| Bonds | Principal | Interest | Total |
|---|---|---|---|
| Series A Bonds | $3,708,000.00 | $121,743.94 | $3,829,743.94 |
| Series D Bonds | $1,140,000.00 | $275,500.00 | $1,415,500.00 |
| Series B Bonds | $7,165,000.00 | $1,181,468.69 | $8,346,468.69 |
| Series C Bonds | $2,150,000.00 | $354,523.06 | $2,504,523.06 |
| Total: | $14,163,000.00 | $1,933,235.69 | **$16,096,235.69** |

35. Additional interest at the *per diem* rate of $2,588.98, together with fees, charges and costs recoverable under the Bond Documents have continued and continue to accrue.

36. The Debtor agrees that the debt it owes to the Trustee is at least $15,000,000.00. (Doc. No. 1, Schedule D, ¶ 2.5.)

**State Court Proceedings**

37. On Monday, February 14, 2022, the Trustee filed its *Complaint* in the Circuit Court of Wood County, West Virginia, styled as Case No. 22-C-21 (the "State Court Proceeding") seeking, among other things, appointment of a special receiver to take charge of, protect, preserve, and sell the Collateral for the benefit of the Trustee and other creditors of the Debtor.

38. A hearing date was tentatively set in the State Court Proceeding for Friday March 4, 2022, (the "Motion Hearing") to hear the Trustee's motion for appointment of a receiver.

39. When the Trustee contacted the Debtor to inform OVU of the State Court Proceeding and the Motion Hearing, the Debtor informed the Trustee of the Petition and this pending case.

40. The Trustee brings this Motion for relief from the automatic stay so that it may pursue its right to have a special receiver appointed under the Bond Documents and pursuant to state law in the State Court Proceeding, among other state law rights and remedies.

**Value of Collateral**

41. The Debtor's Petition estimates the value of the Collateral to be $9,210,122.92.

(Doc. No. 1, Schedule A/B, ¶ 92.)

42.  Upon information and belief and for the purposes of this Motion, the Trustee adopts the Debtor's estimate of the value of the Collateral of $9,210,122.92[2].

### ARGUMENT

Section 362(d) of the bankruptcy code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay ... such as by terminating, conditioning or limiting such stay ... if—(A) the debtor does not have equity in such property; and (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

### I.  The Debtor Agrees it does not have Equity in the Collateral

"To determine if there is equity in the property, the bankruptcy court must determine: (1) the value of the [property] and (2) the amount of debt encumbering the property. If the debt is greater than the value of the [property], the say may be properly lifted." *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 219 (4th Cir. 1994). Here, there is nothing for the Bankruptcy Court to determine because there is no dispute that the Indebtedness amount of **$16,096,235.69** exceeds the value of the Collateral. The Debtor agrees that the Collateral has a value less than $10,000,000.00. (Doc. No. 1, Schedule A/B, ¶ 92.) Therefore, the Debtor agrees that it has no equity in the Collateral. Pursuant to 11 U.S.C. § 362(g), the Trustee has the "burden of proof on the issue of the debtor's equity in the property." The Trustee's burden is easily met due to Debtor's agreement that there is no equity in the Collateral.

### II.  The Debtor is not Attempting to Reorganize

"[T]he necessity of the property [to an effective reorganization] is only important to the extent that it exists simultaneously with a reasonable possibility of reorganization." *Id.* (citing

---

[2] The Trustee believes that the value of the Collateral is less than the Debtor's estimate but does not have appraisals or other valuations at this time to support a lesser value, and therefore adopts the Debtor's estimation of value for the purposes of this Motion. The value of the Collateral will be finally determined by orderly liquidation in the State Court Proceeding or otherwise once relief from the automatic stay is granted.

*United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.* 484 U.S. 365, 375 (1988)). Given the Debtor's chapter 7 Petition for liquidation, it is plain that there is no reasonable possibility of reorganization. The requirements of 11 U.S.C. § 362(d) have been met and the Trustee is entitled to an order terminating the automatic stay with respect to the Collateral so that the Trustee may move forward with the State Court Proceeding.

WHEREFORE, the Trustee respectfully requests that the Court enter an order granting (i) relief from the automatic stay regarding the Collateral imposed pursuant to 11 U.S.C. § 362(a) to permit the Trustee to pursue its rights and remedies under the Bond Documents and pursuant to state law; (ii) waiver of the 14-day stay applicable to orders for relief form the automatic stay pursuant to Fed. R. Bankr. P. 4001(a)(3); and (iii) such other and further relief the Court deems just and equitable.

UMB BANK, N.A.
By Counsel

/s/ Shawn P. George
Shawn P. George, Esquire (WV State Bar # 1370)
Jennie O. Ferretti, Esquire (WV State Bar # 1189)
George & Lorensen, PLLC
1526 Kanawha Blvd., East
Charleston, WV 25311
PH: (304) 343-5555/Fax: (304) 342-2513
sgeorge@gandllaw.com
jferretti@gandllaw.com

and

Charles E. Nelson (*pro hac vice forthcoming*)
nelsonc@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2119
Telephone: 612.371.3211
Facsimile: 612.371.3207

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                           ) Case No. 5:22-bk-00056
                                                 )
Ohio Valley University, Inc.,                    )
                                                 )
                        Debtor.                  )
                                                 )
                                                 )

## CERTIFICATE OF SERVICE

I Shawn P. George do hereby certify that on March 3, 2022, I served the UMB Bank, N.A.'s Motion for Relief From Automatic Stay and Proposed Agreed Order Modifying the Automatic Stay upon counsel of record using the Court's CM/ECF system, which will serve/send notification of such filing to all CM/ECF counsel of record, including the Trustee, U.S. Trustee and by U.S. Mail to Ohio Valley University.

/s/ Shawn P. George
Shawn P. George, Esquire (WV State Bar # 1370)
Jennie O. Ferretti, Esquire (WV State Bar # 1189)
George & Lorensen, PLLC
1526 Kanawha Blvd., East
Charleston, WV 25311
PH: (304) 343-5555/Fax: (304) 342-2513
sgeorge@gandllaw.com
jferretti@gandllaw.com

and

Charles E. Nelson (*pro hac vice forthcoming*)
nelsonc@ballardspahr.com
**BALLARD SPAHR LLP**
2000 IDS Center
80 S. 8th Street
Minneapolis, MN 55402
T: 612.371.3211
F: 612.371.3207
nelsonc@ballardspahr.com