## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE:  Ohio Valley University | ) | CASE NO.: 22-00056 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

## MOTION TO SELL PROPERTY
## FREE AND CLEAR OF LIENS

Thomas H. Fluharty (the "Trustee") respectfully submits this Motion for an order pursuant to 11 U.S.C. §§ 105(a), 363, 704, and Fed. R. Bankr. P. 2002, and 6004 to approve the sale of the bankruptcy estate's interest in property.  In support of this Motion, the Trustee states:

## A.    BACKGROUND

1.    The Debtor[1] filed a petition under Chapter 7 of the Bankruptcy Code on February 17, 2022 (the "Petition Date").

2.    Ohio Valley University ("OVU") was a four-year, private college located in Vienna, WV.  OVU closed its doors permanently on December 18, 2021.

3.    On or about February 17, 2022, the Chapter 7 Trustee was appointed the trustee in the Bankruptcy Case and continues to serve in that capacity.

4.    The Bankruptcy Court entered an Agreed Order Modifying the Automatic Stay on March 4, 2022 terminating the automatic stay imposed under Bankruptcy Code section 362(a) and permitting entry of a Receivership Order.

5.    Pursuant to that certain Agreed Order Granting Motion for Appointment of a Receiver entered on March 8, 2022 (the "Receivership Order") in the case styled as *UMB Bank, N.A. in its capacity as Successor Master Trustee under that certain Master Trust Indenture dated as of August 31, 2007 between Ohio Valley University, Inc., and United Bank, Inc., v. Ohio Valley University, Inc.*, Case No. 22-C-21, Circuit Court of Wood County, West Virginia (the "State Court"), ABTV Receivership Services, LLC. was appointed Special Receiver for OVU and authorized to take possession and control of the Receivership Property.

An "Asset Purchase Agreement," copy attached, provides for the orderly sale and liquidation of, effectively, all remaining assets of the debtor, to a buyer.

6.    Paragraph 16(g) of the Receivership Order authorizes the Receiver to sell the

---

[1] As used herein, the term "Debtor" shall include a single debtor or joint debtors, as the case may be.

Receivership Property, free and clear of all liens, claims, interests and encumbrances, if authorized by an Order of the State Court following notice and a hearing.

7.     Subject to the State Court entering an Order approving and authorizing the Receiver to enter into the transaction described by this Agreement in accordance with the Receivership Order, Buyer desires to purchase and acquire from Receiver certain real property owned by OVU known as the South Campus and North Campus, together with the buildings, improvements, structures, and fixtures located thereon and all appurtenances related thereto, and all Personal Property located on or about the such real property, free and clear of all Encumbrances and Receiver desires to sell, convey and transfer to Buyer such assets, all in the manner and subject to the terms and conditions of this Agreement.

8.     Subject to the Bankruptcy Court entering an Order approving and authorizing the Chapter 7 Trustee to enter into the transaction described by this Agreement, Buyer desires to purchase and acquire from Chapter 7 Trustee three (3) certain parcels of real property owned by OVU that is property of the Bankruptcy Estate, and all of the Chapter 7 Trustee's right, title and interest in and to the Personal Property that may still be considered part of the Bankruptcy Estate, and the Chapter 7 Trustee desires to sell, convey and transfer to Buyer such parcels of real property and all of its right, title and interest in and to the Personal Property, all in the manner and subject to the terms and conditions of this Agreement.

9.     Assets of the bankruptcy estate include real property commonly described as Three (3) certain parcels of real property located on the campus of Ohio Valley University in Parkersburg, WV described as Parcel No. 1, Lots Nos. 67 and 68, Section 1 of Lake Washington Heights Addition, District of Lubeck: Map 115, Parcels D16 and D17 // Parcel No. 2 in District of Parkersburg: Map 150, Parcel 1 //: Parcel No. 3 in District of Parkersburg: Map 150 Parcel D; all of Wood County, West Virginia (the "Property").  For a more detailed description of the real estate, see the attached Asset Purchase Agreement.

          AND

All right, title and interest in and to the personal property considered part of the Bankruptcy Estate excluding:

A.     all cash, cash equivalents and investment accounts of OVU;

B.     all accounts receivable and other receivables of OVU, and all claims, rights, interests and proceeds related thereto;

C.     any retainers or deposits held by the Receiver and/or the Chapter 7 Trustee;

D.     all proceeds of assets of the Bankruptcy Estate liquidated by the Chapter 7 Trustee, including without limitation, motor vehicles, mineral leases and royalties from oil

and gas leases;

E.     all property transferred to the Ohio Valley University Windup Trust prior to OVU filing bankruptcy;

F.     all student records, including all existing transcripts of former students of OVU and Northeastern Christian Junior College that were abandoned as Receivership Property and transferred to the Ohio Valley University Windup Trust pursuant to the Order Granting Motion for Approval to Abandon and Transfer Student Records entered on November 7, 2022 by the State Court;

G.     all Receivership Property other than the Purchased Assets;

H.     all intellectual property of OVU, including but not limited to trademarks, service marks, patents, copyrights, trade names, and web sites, domain names, whether registered or unregistered;

I.     all social media accounts owned or controlled by OVU and related rights;

J.     all rights of Receiver and Chapter 7 Trustee under the Agreement, and all cash payable or deliverable to Receiver, Chapter 7 Trustee and Escrow Agent pursuant to the terms and provisions of the Agreement.

K.     all books and records of OVU including, without limitation, tax returns, personnel records, financial statements, corporate books and records, minute book, and other books and records relating to OVU;

L.     all claims, actions, causes of action, suits, liabilities, obligations, demands, grievances, debts, sums of money, agreements, promises, damages, rights to reimbursement, rights to contribution, rights to indemnification, costs, expenses, attorneys' fees, injunctive relief, disgorgement, restitution, and all other rights and remedies of any type, whether known or unknown, whether in law or in equity, and whether based upon any federal, state, or local law, statute, ordinance, or regulation, or upon any contract, common law source, or any other source, against third parties;

M.     and any documents or other materials which are subject to attorney-client or other privilege (the "Property").

10.     The Debtor is the sole owner of the property.

11.     As of the Petition Date, the Debtor valued the Debtor's interest in Real Property at $6,000,000.00. However, the majority of the debtor's property is subject to a first lien deed of trust and is being sold by the Receivership by separate proceeding in the Circuit Court of Wood County, WV.

12.     Secured claims against the property are as follows:

| Creditor | Type of Lien (e.g., deed of trust, mortgage, statutory, judicial) | Approximate Balance owed as of the time of the filing of the Motion |
|---|---|---|
| UMB Bank, N.A. | Deed of Trust | $15,000,000.00 |

**B.    THE SALE**

13.    The Trustee proposes to sell the Property described in paragraph nine (9) for $42,000.00 to WVU at Parkersburg Foundation, Inc., as a component of a more comprehensive sale by the Receiver for the total sum of $4,600,000.00 (the "Buyer").  The closing date for the sale of the Property is currently scheduled for within 30 days of the final order approving this sale.  The Asset Purchase Agreement is attached hereto as Exhibit A.  The Trustee believes that the sales price is fair and reasonable considering the valuation of the property given by the Debtor, the fact that the property has been listed for sale with the general public, and considering the Trustee's estimation as to value and/or the Property's appraised value.  The sales price of $42,000.00 will be paid to the estate by the Receivership.

14.    The Buyer is not an insider of the Debtor, and the sale represents an arms-length transaction between the parties, made without fraud, collusion, and no attempt has been made by either party to take any unfair advantage of the other. The Buyer is purchasing the Property in good faith pursuant to 11 U.S.C. § 363(m).

15.    From the sale proceeds, the Trustee proposes to pay the costs of the sale, including reasonable attorney's fees, commissions, and taxes. The Trustee estimates that, after the payment of the costs of sale, approximately $40,000.00 in net proceeds will be realized from the sale.  The Debtor is not entitled to an exemption.  For this reason, the sale is in the best interest of the debtor, the estate, creditors, and other parties in interest and should be approved.

16.    The sale of the Property is being made free and clear of any interest in the Property held by an entity other than the estate pursuant to 11 U.S.C. § 363(f) because either: (1) applicable non-bankruptcy law permits the sale of the Property free and clear of such interests; (2) such entity consents to the sale; (3) such interest is a lien and the price at which the Property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceedings, to accept a money satisfaction of such interest.

**C.    OBJECTION**

17.    Any party that objects to the motion to sell must file a written objection with the

Bankruptcy Court, at Northern District: P.O. Box 70, Wheeling, WV 26003, the United States Trustee, at 2025 United States Courthouse, 300 Virginia Street East, Charleston, WV 25301, and the Chapter 7 Trustee, 408 Lee Avenue, Clarksburg, WV 26301, within the notice period issued by the Bankruptcy Court Clerk. The written objection shall set out the specific grounds for objection. Unless the Court orders otherwise, or unless the Court sets a hearing on this Motion, that objection period is generally 23 days from the filing of this motion pursuant to Fed. R. Bankr. P. 2002(a)(2). The deadlines set forth in this Paragraph concerning objections to a proposed sale supercede those provided in Fed. R. Bankr.P. 6004(b).

**D.     RELIEF REQUESTED**

**WHEREFORE**, the Trustee requests:

A.     That the Clerk's Office issue a notice to all interested parties of the filing of the Motion to Sell pursuant to Fed. R. Bankr. P. 2002(a)(2), (c)(1), (k) and 6004(a).

B.     That the Court enter an Order, submitted by the Trustee, in the absence of any timely filed objection to the sale motion, which:

1.     Authorizes the Trustee to sell the Property;

2.     Approves the sale of the Property pursuant to 11 U.S.C. § 363(b), (f), (m) and Fed. R. Bankr. P. 6004;

3.     Declares that all liens against the Property attach to the proceeds of the sale;

4.     Approves the payment of sale proceeds to: (1) the costs of sale; (2) the Trustee for payment to allowed claims filed in the Debtor's bankruptcy case.

5.     Waiving the 14-day stay of the order approving the sale under Fed. R. Bankr. P. 6004(h);

6.     Requiring the Chapter 7 Trustee to file a final report of sale with the Court in accordance with Fed. R. Bankr. P. 6004(f).

7.     Granting such other relief that the court deems just and proper.

Respectfully submitted,


   /s/ Thomas H. Fluharty
Thomas H. Fluharty, Trustee
WV Bar No.: 1231
408 Lee Avenue
Clarksburg, WV 26301
(304) 624-7832

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement") is entered into this _____ day of June, 2023 (the "Signing Date"), by and among **WVU AT PARKERSBURG FOUNDATION, INC.**, a West Virginia non-profit corporation ("Buyer"), **OHIO VALLEY UNIVERSITY, INC.**, a West Virginia non-profit corporation ("OVU"), by and through **B. RILEY FINANCIAL, INC. d/b/a B. RILEY,** a Delaware corporation, successor by merger to **ABTV RECEIVERSHIP SERVICES, LLC**, **acting solely in its capacity as Special Receiver for OVU** ("Receiver") and **THOMAS H. FLUHARTY**, **Chapter 7 Trustee for OVU** ("Chapter 7 Trustee").

### RECITALS

A.      OVU was a four-year, private college located in Vienna, West Virginia. OVU closed its doors permanently on December 18, 2021.

B.      On February 17, 2022, OVU filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of West Virginia (the "Bankruptcy Court"), commencing Case No. 5:22-bk-00056 (the "Bankruptcy Case").

C.      On or about February 18, 2022, the Chapter 7 Trustee was appointed the trustee in the Bankruptcy Case and continues to serve in that capacity.

D.      The Bankruptcy Court entered the Agreed Order Modifying the Automatic Stay on March 4, 2022 terminating the automatic stay imposed under Bankruptcy Code section 362(a) and permitting entry of the Receivership Order (as defined below).

E.      Pursuant to that certain Agreed Order Granting Motion for Appointment of a Receiver entered on March 8, 2022 (the "Receivership Order") in the case styled as *UMB Bank, N.A., in its capacity as Successor Master Trustee under that certain Master Trust Indenture dated as of August 31, 2007 between Ohio Valley University, Inc., and United Bank, Inc. v. Ohio Valley University, Inc.,* Case No. 22-C-21, Circuit Court of Wood County, West Virginia (the "State Court"), Receiver was appointed Special Receiver for OVU and authorized to take possession and control of the Receivership Property (as defined below).

F.      Paragraph 16(g) of the Receivership Order authorizes the Receiver to sell the Receivership Property, free and clear of all liens, claims, interests and encumbrances, if authorized by an Order of the State Court following notice and a hearing.

G.      Subject to the State Court entering an Order approving and authorizing the Receiver to enter into the transaction described by this Agreement in accordance with the Receivership Order, Buyer desires to purchase and acquire from Receiver certain real property owned by OVU known as the South Campus and North Campus, together with the buildings, improvements, structures, and fixtures located thereon and all appurtenances related thereto, and all Personal Property located on or about the such real property, free and clear of all

Encumbrances and Receiver desires to sell, convey and transfer to Buyer such assets, all in the manner and subject to the terms and conditions of this Agreement.

H.     Subject to the Bankruptcy Court entering an Order approving and authorizing the Chapter 7 Trustee to enter into the transaction described by this Agreement, Buyer desires to purchase and acquire from Chapter 7 Trustee three (3) certain parcels of real property owned by OVU that is property of the Bankruptcy Estate, and all of the Chapter 7 Trustee's right, title and interest in and to the Personal Property that may still be considered part of the Bankruptcy Estate, and the Chapter 7 Trustee desires to sell, convey and transfer to Buyer such parcels of real property and all of its right, title and interest in and to the Personal Property, all in the manner and subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing, and the mutual obligations and covenants set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

**ARTICLE I**
**DEFINITIONS**

Unless otherwise defined herein, terms used herein shall have the meanings set forth below:

"<u>Agreement</u>" means this Asset Purchase Agreement, including all the Schedules hereto, as the same may be amended from time to time in accordance with its terms.

"<u>Bankruptcy Estate Real Property</u>" means three (3) certain parcels of real property owned by OVU that is property of the Bankruptcy Estate, as more particularly described on <u>Schedule 2.1(b)</u> and incorporated herein by reference.

"<u>Bankruptcy Sale Motion</u>" means the <u>Motion to Sell Property Free and Clear of Liens</u> to be filed with the Bankruptcy Court by the Chapter 7 Trustee and properly served upon all necessary parties.

"<u>Campus Real Property</u>" means certain real property owned by OVU known as the South Campus and North Campus, together with the buildings, improvements, structures, and fixtures located thereon and all appurtenances related thereto, that is Receivership Property per paragraph 7(b) of the Receivership Order, as more particularly described on <u>Schedule 2.1(a)</u> and incorporated herein by reference.

"<u>Encumbrance</u>" or "<u>Encumbrances</u>" means any lien (statutory or otherwise), encumbrance, security interest, mortgage, deed of trust, collateral assignment, right of setoff, debt, pledge, levy, charge, encumbrance, encroachment, tax or Order of any Governmental Authority, option, right of refusal, restriction (whether on transfer, disposition or otherwise), other similar agreement or terms tending to limit any right or privilege of OVU under any contract, mortgage, lease, deed of trust, hypothecation, indenture, security agreement, easement, license, servitude, proxy, voting trust, transfer restriction under any shareholder or similar

agreement, or any other agreement, arrangement, contract, commitment or binding obligation of any kind whatsoever, whether oral or written, or imposed by any applicable law, equity or otherwise.

"Escrow Agent" means the Receiver's counsel, Brandy M. Rapp, Esq., Whiteford Taylor & Preston LLP.

"Final Order" means an Order of the State Court, Bankruptcy Court or other court of competent jurisdiction: (a) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing, motion for new trial, or any other proceeding challenging the findings, conclusions or relief granted in the Order has been timely filed or otherwise commenced or, if any of the foregoing has been timely filed or otherwise commenced, it has been disposed of in a manner that upholds and affirms the subject order in all material respects without the possibility for further appeal or rehearing thereon; (b) as to which the time for instituting and/or filing an appeal, a notice of appeal, motion for rehearing, motion for new trial, or any other proceeding challenging the findings, conclusions or relief granted by the Order shall have expired; and (c) as to which no stay is in effect.

"Governmental Authority" means any federal, state, local, municipal, foreign, supranational or other governmental or quasi-governmental authority of any nature (including any governmental agency, branch, commission, department, official or entity and any court or other tribunal), or any administrative, executive, judicial, legislative, police, regulatory or taxing authority, or arbitral body.

"Liability" means any liability, including but not limited to any direct or indirect indebtedness, guaranty, endorsement, warranty, indemnification, product liability, environmental liability, commissions, claim, loss, damage, deficiency, cost, expense, tax, obligation or responsibility, whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, and whether due or to become due and regardless of when asserted.

"Order" means any award, decision, decree, order, injunction, ruling, judgment, or consent of or entered, issued, made or rendered by any Governmental Authority.

"Personal Property" means all tangible personal property owned by OVU and, as of the Closing Date, located on the Campus Real Property, including, without limitation, all furniture, fixtures, furnishings, machinery, equipment and other miscellaneous items.

"Receivership Property" means that certain personal and real property owned by OVU as defined in paragraph 7 of the Receivership Order, including the Personal Property.

"Sale Motion" means the Motion for Approval of Asset Purchase Agreement with WVU at Parkersburg Foundation, Inc. to be filed with the State Court by the Receiver and served upon all necessary parties.

"Schedules" means the schedules attached hereto.

3

**ARTICLE II**
**PURCHASE AND SALE OF ASSETS**

2.1 __Purchase and Sale.__

(a) On and subject to the terms and conditions set forth in this Agreement, at the Closing, Receiver agrees to sell to Buyer, and Buyer agrees to purchase from Receiver, free and clear of all Encumbrances, certain of OVU's assets listed below (collectively, the "Receiver's Purchased Assets"):

(i) the Campus Real Property as legally described on Schedule 2.1(a); and

(ii) all Personal Property.

(b) On and subject to the terms and conditions set forth in this Agreement, at the Closing, the Chapter 7 Trustee agrees to sell to Buyer, and Buyer agrees to purchase from the Chapter 7 Trustee, free and clear of all Encumbrances, the Bankruptcy Estate Real Property as described on Schedule 2.1(b) and all of the Chapter 7 Trustee's right, title and interest in and to the Personal Property (collectively, the "Bankruptcy Estate Purchased Assets"). The Receiver's Purchased Assets and the Bankruptcy Estate Purchased Assets are hereinafter sometimes collectively referred to as the "Purchased Assets."

The Purchased Assets are BEING SOLD "AS IS" AND "WHERE IS," AND "WITH ALL EXISTING FAULTS." Buyer specifically acknowledges that the Purchased Assets are sold to Buyer "as is", "where is", and "with all existing faults", known or unknown, and that no warranties or representations or covenants of any kind, express or implied, have been or will be made by OVU, Receiver, Chapter 7 Trustee or any other party with respect to the physical, operating or any other condition of the Purchased Assets.

2.2 __Excluded Assets.__ Notwithstanding anything to the contrary in this Agreement, the following assets of OVU are not being sold, transferred, conveyed or delivered to Buyer hereunder (all of the following are referred to collectively as the "Excluded Assets"), and Buyer shall have no obligations of any kind or nature with respect to or arising from:

(a) all cash, cash equivalents and investment accounts of OVU.

(b) all accounts receivable and other receivables of OVU, and all claims, rights, interests and proceeds related thereto.

(c) any retainers or deposits held by the Receiver and/or the Chapter 7 Trustee;

(d) all proceeds of assets of the Bankruptcy Estate liquidated by the Chapter 7 Trustee, including without limitation, motor vehicles, mineral leases and royalties from oil and gas leases;

4

(e)     all property transferred to the Ohio Valley University Windup Trust prior to OVU filing bankruptcy;

(f)     all student records, including all existing transcripts of former students of OVU and Northeastern Christian Junior College that were abandoned as Receivership Property and transferred to the Ohio Valley University Windup Trust pursuant to the <u>Order Granting Motion for Approval to Abandon and Transfer Student Records</u> entered on November 7, 2022 by the State Court;

(g)     all Receivership Property other than the Purchased Assets;

(h)     all intellectual property of OVU, including but not limited to trademarks, service marks, patents, copyrights, trade names, and web sites, domain names, whether registered or unregistered;

(i)     all social media accounts owned or controlled by OVU and related rights;

(j)     all rights of Receiver and Chapter 7 Trustee under this Agreement, and all cash payable or deliverable to Receiver, Chapter 7 Trustee and Escrow Agent pursuant to the terms and provisions hereof;

(k)     all books and records of OVU including, without limitation, tax returns, personnel records, financial statements, corporate books and records, minute book, and other books and records relating to OVU;

(l)     all claims, actions, causes of action, suits, liabilities, obligations, demands, grievances, debts, sums of money, agreements, promises, damages, rights to reimbursement, rights to contribution, rights to indemnification, costs, expenses, attorneys' fees, injunctive relief, disgorgement, restitution, and all other rights and remedies of any type, whether known or unknown, whether in law or in equity, and whether based upon any federal, state, or local law, statute, ordinance, or regulation, or upon any contract, common law source, or any other source, against third parties; and

(m)     any documents or other materials which are subject to attorney-client or other privilege.

2.3     **Excluded Liabilities.**  Buyer shall not assume or become liable for the payment or performance of any Liabilities of Receiver, Chapter 7 Trustee, or OVU of any nature whatsoever, whether accrued or unaccrued, known or unknown, fixed or contingent ("<u>Excluded Liabilities</u>").  Without limitation to the foregoing, Buyer expressly shall not assume or be obligated to pay, perform or discharge any Liabilities of Receiver, Chapter 7 Trustee, or OVU arising out of or relating to: (a) any accounts payables; (b) any contracts; (c) any federal, state or local sales, use, unclaimed property, escheat or other tax Liabilities; (d) any employee obligations or Liabilities of any kind, including, without limitation, Liabilities related to employee pension, profit sharing, retirement or other employee benefit or welfare plans, or any severance, commissions, bonuses or other payment obligations, or any Liabilities related to the

5

termination of any employee; or (e) the operation of OVU or the ownership of the Purchased Assets prior to the Closing. The Purchased Assets shall be conveyed free and clear of any liens or Encumbrances that are not acceptable to Purchaser.

2.4 **Good Faith Deposit**. Upon the execution and delivery of this Agreement by the parties hereto and prior to the filing of the Sale Motion and the Bankruptcy Sale Motion, Buyer shall pay (or shall have paid) Two Hundred Fifty Thousand and No/100 Dollars ($250,000.00) ("Good Faith Deposit") by wire transfer of immediately available funds to the Escrow Agent. Buyer acknowledges and agrees that, upon receipt of the Good Faith Deposit, the Escrow Agent is authorized to disburse one-half (1/2) of the Good Faith Deposit ($125,000.00) to Receiver. Buyer acknowledges and agrees that, upon receipt of one-half of the Good Faith Deposit ($125,000.00), Receiver may use and/or distribute such funds to pay for current outstanding and future expenses related to the maintenance, preservation and administration (excluding Receiver's fees and Receiver's attorney's fees) of the Purchased Assets in accordance with the Receivership Order. The remaining one-half of the Good Faith Deposit ($125,000.00) shall be held by the Escrow Agent and distributed in accordance with the terms of this Agreement.

## ARTICLE III
## PURCHASE PRICE AND PAYMENT

3.1 **Purchase Price.** The purchase price for the Purchased Assets shall be Four Million Six Hundred Thousand and No/100 Dollars ($4,600,000.00) (the "Purchase Price"). At the Closing, Buyer and Receiver shall make the following payments and take the following actions:

(a) Buyer shall pay $4,600,000.00, less the Good Faith Deposit, by wire transfer of immediately available funds to an account designated by the Receiver in a written notice to Buyer at least one business day prior to the Closing;

(b) Escrow Agent shall pay the remaining one-half of the Good Faith Deposit ($125,000.00), by wire transfer of immediately available funds to an account designated by the Receiver in a written notice to Escrow Agent within three (3) business days of the Closing;

(c) Within three (3) business days of the Closing, Receiver shall pay Forty Two Thousand and No/100 Dollars ($42,000.00) to the Chapter 7 Trustee in full satisfaction of the sale of the Bankruptcy Estate Purchased Assets.

3.2 **Closing; Closing Date.** Unless otherwise agreed upon in writing by the parties, the closing of the transactions contemplated by this Agreement (the "Closing") shall take place no later than thirty (30) business days after the entry of Final Orders granting the Sale Motion and Bankruptcy Sale Motion (the "Closing Date"). The Closing will be effectuated by the delivery of documents and the Purchase Price on or before Noon Eastern Standard Time on the Closing Date, or in such other manner as the parties may mutually agree. The Closing shall be effective upon payment of the Purchase Price and delivery of such documents.

Buyer and Receiver each acknowledge and agree that the State Court's entry of a Final Order granting the Sale Motion is a requirement for Receiver and Buyer to consummate the transactions related to the Receiver's Purchased Assets and that such requirement is a condition precedent to Closing that cannot be waived by either party.

Buyer and Chapter 7 Trustee each acknowledge and agree that the Bankruptcy Court's entry of a Final Order granting the Bankruptcy Sale Motion is a requirement for Chapter 7 Trustee and Buyer to consummate the transactions related to the Bankruptcy Estate Purchased Assets and that such requirement is a condition precedent to Closing that cannot be waived by either party.

3.3    **Actions at Closing.**

(a)    By Buyer.  At the Closing, Buyer shall execute and/or deliver, or cause to be executed and/or delivered, to Receiver: (i) the Purchase Price; (ii) any and all other agreements, certificates, instruments and other documents required of Buyer under this Agreement; and (iii) any and all other agreements, certificates, instruments and other documents reasonably requested by Receiver and the Chapter 7 Trustee.

(b)    By Receiver.  At the Closing, Receiver shall execute and/or deliver, or cause to be executed and/or delivered, to Buyer: (i) bills of sale, deeds and other instruments of conveyance dated as of the Closing Date sufficient to transfer to Buyer title to the Receiver's Purchased Assets, free and clear of all Encumbrances; (ii) possession of the Receiver's Purchased Assets; (iii) a certified copy of the Final Order entered by the State Court granting the Sale Motion; (iv) any and all other agreements, certificates, instruments, and other documents required of Receiver under this Agreement, including releases of Encumbrances filed against the Receiver's Purchased Assets; and (v) any and all other agreements, certificates, instruments and other documents reasonably requested by Buyer including documents reasonably necessary for Buyer to obtain title insurance for the Campus Real Property.

(c)    By the Chapter 7 Trustee.  At the Closing, the Chapter 7 Trustee shall execute and/or deliver, or cause to be executed and/or delivered, to Buyer: (i) deeds, bills of sale, and other instruments of conveyance dated as of the Closing Date sufficient to transfer to Buyer title to the Bankrutpcy Estate Purchased Assets, free and clear of all Encumbrances; (ii) possession of the Bankruptcy Estate Purchased Assets; (iii) a certified copy of the Final Order entered by the Bankruptcy Court granting the Bankruptcy Sale Motion; (iv) any and all other agreements, certificates, instruments, and other documents required of the Chapter 7 Trustee under this Agreement; and (v) any and all other agreements, certificates, instruments and other documents reasonably requested by Buyer, including documents reasonably necessary for Buyer to obtain title insurance for the Bankruptcy Estate Real Property.

(d)    Buyer, Receiver and the Chapter 7 Trustee shall take all further actions and execute and deliver any additional agreements, certificates, instruments, and other documents on or after the Closing Date as Buyer, Receiver or Chapter 7 Trustee shall reasonably request to effectuate the transactions contemplated by this Agreement.

(e)     As set forth in Article 7.1 of this Agreement, the Receiver has provided to Buyer (i) a title commitment for the Campus Real Property issued by Old Republic National Title Insurance Company dated June 10, 2023 and supporting documentation and (ii) a title commitment for the Bankruptcy Estate Real Property issued by Old Republic National Title Insurance Company dated June 10, 2023 supporting documentation.  At Closing, Buyer shall purchase an owner's title insurance policy for the Campus Real Property and an owner's title insurance policy for the Bankruptcy Estate Real Property from Old Republic National Title Insurance Company.

3.4     **Transfer Taxes.**  Any and all transfer, sales, transaction, or similar tax imposed by any taxing authority, including without limitation, any state, county, municipality or other subdivision thereof, due as a result of the transactions contemplated by this Agreement shall be paid by the Receiver and Chapter 7 Trustee.

3.5     **Prorations**.    At Closing, all personal property, *ad valorem*, and real estate taxes related to the Purchased Assets, which are billed or to be billed for the calendar year 2023, shall be prorated and adjusted on a calendar year basis as of the Closing Date.

3.6     **Closing Costs**.  At Closing, Receiver and Chapter 7 Trustee agree to pay for the following: (i) preparation of deeds and other instruments of conveyance sufficient to transfer to Buyer title to the Purchased Assets; (ii) cost for obtaining and recording releases or termination statements for any Encumbrances on the Purchased Assets and (iii) all transfer stamps imposed on the conveyance of the Purchased Assets (to the extent applicable).

At Closing, Buyer agrees to pay for the following: (i) premium for owner's title insurance policy for the Campus Real Property from Old Republic National Title Insurance Company; (ii) premium for owner's title insurance policy for the Bankruptcy Estate Real Property from Old Republic National Title Insurance Company; (iii) any and all inspections commissioned by Buyer, other than those specifically identified in Article 7.1 of this Agreement; and (iv) all recording fees incurred to record the deeds and other instruments of conveyance sufficient to transfer to Buyer title to the Campus Real Property and Bankrupcy Estate Real Property.

## ARTICLE IV
## REPRESENTATIONS,  WARRANTIES AND COVENANTS OF RECEIVER

Receiver represents and warrants to Buyer, as a material inducement for Buyer to enter into this Agreement, the following as of the Signing Date and as of the Closing Date.

4.1     **Authority.**  Pursuant to the Receivership Order, the Receiver has the power and authority to execute and deliver this Agreement and to consummate the transactions related to the Receiver's Purchased Assets subject to entry of an Order by the State Court approving the Sale Motion.

4.2     **Brokers or Finders.**  Pursuant to the Stipulation and Consent Order Authorizing the Receiver to Retain and Employ Keen-Summit Capital Partners, LLC entered by the State Court on June 16, 2022, the Receiver retained Keen-Summit Capital Partners, LLC ("Keen-

8

Summit") to market and sell the Campus Real Property (as defined in the Receivership Order) upon the terms negotiated and set forth in the Retention Agreement dated June 8, 2022. Provided the transactions contemplated under this Agreement occur, the Receiver will pay Keen-Summit the amount due to it under the Retention Agreement upon entry of an Order by the State Court authorizing such distribution. Any such fee to be paid to Keen-Summit will be an Excluded Liability.

4.3     **Condition of Receiver's Purchased Assets**.  The Receiver's Purchased Assets are being sold in their "AS IS, WHERE IS" condition and WITH ALL FAULTS.  RECEIVER HAS NOT MADE AND DOES NOT MAKE, ANY EXPRESS OR IMPLIED REPRESENTATIONS, STATEMENTS, WARRANTIES, OR CONDITIONS OF ANY KIND OR NATURE WHATSOEVER CONCERNING THE CONDITION OF THE RECEIVER'S PURCHASED ASSETS.  THERE ARE NO WARRANTIES BY THE RECEIVER RELATING TO TITLE, EXISTING LIENS, POSSESSION, QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF THE RECEIVER'S PURCHASED ASSETS.

4.4     **Offering to Sell or Market the Purchased Assets**.  Upon the entry of the State Court Order approving the Sale Motion, Receiver shall cease marketing the Purchased Assets for sale and shall not accept any offers to purchase or otherwise acquire the Purchased Assets.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF CHAPTER 7 TRUSTEE

Chapter 7 Trustee represents and warrants to Buyer, as a material inducement for Buyer to enter into this Agreement, the following as of the Signing Date and as of the Closing Date.

5.1     **Authority**.  The Chapter 7 Trustee has the power and authority to execute and deliver this Agreement and to consummate the transactions related to the Bankruptcy Estate Purchased Assets subject to entry of an Order by the Bankruptcy Court approving the Bankruptcy Sale Motion.

5.2     **Brokers or Finders**.   No Liability has been incurred or shall be incurred by any person for brokerage or finders' fees or agents' commissions or any similar changes in connection with this Agreement or the transactions contemplated hereby as a result of the actions of the Chapter 7 Trustee.

5.3     **Condition of Bankruptcy Estate Purchased Assets**.  The Bankruptcy Estate Purchased Assets are being sold in its "AS IS, WHERE IS" condition and WITH ALL FAULTS. THE CHAPTER 7 TRUSTEE HAS NOT MADE AND DOES NOT MAKE, ANY EXPRESS OR IMPLIED REPRESENTATIONS, STATEMENTS, WARRANTIES, OR CONDITIONS OF ANY KIND OR NATURE WHATSOEVER CONCERNING THE CONDITION OF THE BANKRUPTCY ESTATE PURCHASED ASSETS. THERE ARE NO WARRANTIES BY THE CHAPTER 7 TRUSTEE RELATING TO TITLE, EXISTING LIENS, POSSESSION, QUIET ENJOYMENT, OR THE LIKE IN THE DISPOSITION OF THE BANKRUPTCY ESTATE PURCHASED ASSETS.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Receiver and the Chapter 7 Trustee, as a material inducement for Receiver and the Chapter 7 Trustee to enter into this Agreement, the following as of the Signing Date and as of the Closing Date.

6.1    **Organization of Buyer.**  Buyer is a non-profit corporation duly organized, legally existing and in good standing under the laws of the State of West Virginia.

6.2    **Authority.**  The execution, delivery and performance of this Agreement by Buyer and the consummation of the transactions contemplated herein have been duly authorized by the governing bodies of Buyer, and no other act or proceeding on the part of its governing bodies is necessary to approve the execution and delivery of this Agreement, the performance by Buyer of its obligations hereunder or the consummation of the transactions contemplated herein.  This Agreement has been duly and validly executed and delivered by Buyer and constitutes a legal, valid, and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

6.3    **Brokers or Finders.**  No Liability has been incurred or shall be incurred by any person for brokerage or finders' fees or agents' commissions or any similar charges in connection with this Agreement or the transactions contemplated hereby as a result of the actions of Buyer.

6.4    **"AS IS" Transaction.**  Buyer hereby acknowledges and agrees that Receiver has made no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Receiver's Purchased Assets (including, without limitation, income to be derived or expenses to be incurred in connection with the Receiver's Purchased Assets, the physical condition of the Receiver's Purchased Assets, the value of the Receiver's Purchased Assets (or any portion thereof), or the merchantability or fitness of the Receiver's Purchased Assets). Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition of the Receiver's Purchased Assets, as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Receiver's Purchased Assets Buyer is doing so based upon such independent inspections and investigations. Buyer further acknowledges that the consideration for the Receiver's Purchased Assets specified in this Agreement has been agreed upon by the Receiver and Buyer after good-faith arms-length negotiation in light of Buyer's agreement to purchase the Receiver's Purchased Assets "AS IS," "WHERE IS," and "WITH ALL FAULTS".  At closing, Buyer agrees that it shall take possession of the Receiver's Purchased Assets AS IS, WHERE IS, WITH ALL FAULTS, KNOWN OR UNKNOWN, WITHOUT ANY WARRANTY OR REPRESENTATION OF ANY NATURE, EXPRESS OR IMPLIED BY OVU OR THE RECEIVER, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE, OR ANY WARRANTY, EXPRESS OR IMPLIED, RESPECTING TITLE OR NON-INFRINGEMENT.

Buyer hereby acknowledges and agrees that Chapter 7 Trustee has made no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Bankruptcy Estate Purchased Assets (including, without limitation, income to be derived or expenses to be incurred in connection with the Bankruptcy Estate Purchased Assets, the physical condition of the Bankruptcy Estate Purchased Assets, the value of the Bankruptcy Estate Purchased Assets (or any portion thereof), or the merchantability or fitness of the Bankruptcy Estate Purchased Assets). Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the physical condition of the Bankruptcy Estate Purchased Assets, as Buyer deemed necessary or appropriate and that in proceeding with its acquisition of the Bankruptcy Estate Purchased Assets Buyer is doing so based upon such independent inspections and investigations. Buyer further acknowledges that the consideration for the Bankruptcy Estate Purchased Assets specified in this Agreement has been agreed upon by the Chapter 7 Trustee and Buyer after good-faith arms-length negotiation in light of Buyer's agreement to purchase the Bankruptcy Estate Purchased Assets "AS IS," "WHERE IS," and "WITH ALL FAULTS". At closing, Buyer agrees that it shall take possession of the Bankruptcy Estate Purchased Assets AS IS, WHERE IS, WITH ALL FAULTS, KNOWN OR UNKNOWN, WITHOUT ANY WARRANTY OR REPRESENTATION OF ANY NATURE, EXPRESS OR IMPLIED BY OVU OR THE CHAPTER 7 TRUSTEE, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE, OR ANY WARRANTY, EXPRESS OR IMPLIED, RESPECTING TITLE OR NON-INFRINGEMENT.

6.5 **Independent Investigation.** Buyer has conducted its own independent investigation, review and analysis of the Purchased Assets, which investigation, review and analysis was done by Buyer and its representatives. Buyer acknowledges that it and its representatives have been provided reasonable access to the Purchased Assets for such purpose. In entering into this Agreement, Buyer acknowledges that it has relied upon the aforementioned investigation, review and analysis and not on any factual representation or opinions of Receiver and/or Chapter 7 Trustee.

Buyer hereby agrees and acknowledges that (a) neither Receiver nor any of its respective officers, directors, employees, or representatives make or have made any representation or warranty, express or implied, at law or in equity, with respect to the Receiver's Purchased Assets including as to: (i) merchantability or fitness for any particular use or purpose; (ii) the operation of the Receiver's Purchased Assets by Buyer after Closing in any manner; or (iii) the probable success or profitability of the Receiver's Purchased Assets after Closing and (b) neither Receiver nor any of its respective officers, directors, employees, or representatives will be subject to any liability or indemnification obligation to Buyer or to any other person resulting from the distribution to Buyer, its representatives, or Buyer's use of, any information relating to the Receiver's Purchased Assets, including any information, documents or material made available to Buyer, whether orally or in writing, or in any other form.

Buyer hereby agrees and acknowledges that (a) neither Chapter 7 Trustee nor any of his respective employees or representatives make or have made any representation or warranty, express or implied, at law or in equity, with respect to the Bankruptcy Estate Purchased Assets including as to: (i) merchantability or fitness for any particular use or purpose; (ii) the operation

11

of the Bankruptcy Estate Purchased Assets by Buyer after Closing in any manner; or (iii) the probable success or profitability of the Bankruptcy Estate Purchased Assets after Closing and (b) neither Chapter 7 Trustee nor any of his respective employees or representatives will be subject to any liability or indemnification obligation to Buyer or to any other person resulting from the distribution to Buyer, its representatives, or Buyer's use of, any information relating to the Bankruptcy Estate Purchased Assets, including any information, documents or material made available to Buyer, whether orally or in writing, or in any other form.

## ARTICLE VII
## COVENANTS AND AGREEMENTS

7.1   **Due Diligence.**  Buyer shall have thirty (30) days from the Signing Date ("Due Diligence Period") to  complete its due diligence on the Purchased Assets (the "Investigation"). Receiver shall provide Buyer with reasonable assistance with respect to the Investigation. As of the Signing Date, the Receiver has provided the Buyer the following: (i) ALTA Commitment and supporting documentation issued for the Campus Real Property by Old Republic National Title Insurance Company dated August 30, 2022, revised December 15, 2022 and January 13, 2023, updated on April 10, 2023 and finalized on June 10, 2023, (ii) ALTA Commitment and supporting documentation issued for the Bankruptcy Estate Real Property by Old Republic National Title Insurance Company dated November 30, 2022, revised December 15, 2022 and January 13, 2023, updated on April 10, 2023 and finalized on June 10, 2023, (iii) Property Condition Assessment prepared by GRS Group dated September 14, 2022, (iv) Phase I Environmental Site Assessment prepared by GRS Group dated September 20, 2022, (v) Zoning Report prepared  by GRS Group dated December 15, 2022, (vi) ALTA/NSPS Survey for the Campus Real Property prepared by GRS Group dated November 29, 2022 and revised on December 2, 2022, December 16, 2022 and January 5, 2023, and (vii) ALTA/NSPS Survey for the Bankruptcy Estate Property prepared by GRS Group dated January 9, 2023 and revised on January 12, 2023 and January 17, 2023.

If Buyer during the Due Diligence Period for no reason or for any reason whatsoever is not completely satisfied (in Buyer's sole discretion) with the Investigation or the results of the Investigation, Buyer may terminate this Agreement and forfeit one half (1/2) of the Good Faith Deposit.  The Buyer shall provide notice to Receiver and Escrow Agent in writing that the Agreement is terminated and the one-half portion of the Good Faith Deposit held by Escrow Agent shall be  returned to Buyer.

7.2   **Court Orders.**  Promptly upon full execution of this Agreement and receipt of the Good Faith Deposit by Escrow Agent, (i) Receiver will file the Sale Motion with the State Court and (ii) Chapter 7 Trustee will file the Bankruptcy Sale Motion with the Bankruptcy Court. Buyer agrees to promptly take such actions as are reasonably requested by Receiver and/or Chapter 7 Trustee to assist in obtaining entry of Orders granting  the Sale Motion and the Bankruptcy Sale Motion, including furnishing affidavits or other documents for filing for purposes, among others, of providing necessary assurances of performance by Buyer of its obligations under this Agreement and that Buyer is a good faith buyer.

This Agreement is subject to approval by (i) the State Court with respect to the Receiver's Purchased Assets and (ii) the Bankruptcy Court with respect to the Bankruptcy Estate Purchased Assets.   Within thirty (30) days of entry of Final Orders granting the Sale Motion and the Bankruptcy Sale Motion, Receiver, Chapter 7 Trustee and Buyer will close the transactions contemplated by this Agreement.  The Final Orders shall be attached to the respective deeds and bills of sale transferring the Purchased Assets to the Buyer.

## ARTICLE VIII
## OTHER AGREEMENTS

8.1   **Termination.**   This Agreement may be terminated and the transactions contemplated herein may be abandoned:

(a)   By the mutual written consent of Buyer and Receiver;

(b)   By Buyer, if during the Due Diligence Period for no reason or for any reason whatsoever Buyer is not completely satisfied (in Buyer's sole discretion) with the Investigation or the results of the Investigation;

(c)   By Buyer, if Receiver is unable to obtain the Sale Order within one hundred eighty (180) days of expiration of the Due Diligence Period;

(d)   By Buyer, if Chapter 7 Trustee is unable to obtain the Bankruptcy Sale Order within one hundred eighty (180) days of expiration of the Due Diligence Period;

(e)   By Receiver, if subsequent events demonstrate that the proposed sale is not in the best interest of the Receivership estate, as determined by the Receiver in its reasonable business judgment, which shall be exercised in good faith; and

(f)   By Receiver, if the Closing shall not have occurred within sixty (60) days of the latter of the State Court's entry of a Final Order granting the Sale Motion or the Bankruptcy Court's entry of a Final Order granting the Bankruptcy Sale Motion.

In the event of termination pursuant to Article 8.1 (a) or (e) of this Agreement, the Good Faith Deposit shall be returned to the Buyer.

In the event of termination pursuant to Article 8.1 (b), (c) or (d) of this Agreement,  one-half (1//2) of the Good Faith Deposit shall be returned to the Buyer.

In the event of termination pursuant to Article 8.1 (f) of this Agreement, Buyer shall forfeit the Good Faith Deposit.

8.2   **Effect of Termination**.  If this Agreement is terminated as described herein and the transactions contemplated by this Agreement are not consummated, this Agreement shall become null and void and have no further force or effect and no liability shall attach to any party to this Agreement.

**ARTICLE IX**
**MISCELLANEOUS**

9.1    **Fees and Expenses.**  Except as otherwise stated in this Agreement, all expenses incurred by the parties shall be borne solely and entirely by the party that has incurred such expenses.

9.2    **Notices.**  Except as otherwise set forth in this Agreement, all notices and demands required or permitted by this Agreement shall be in writing addressed to the relevant address set forth below or such other relevant address as may be specified in writing by the relevant party. All notices and demands required or permitted by this Agreement shall be deemed properly made: (a) upon personal delivery; (b) three (3) business days after deposit in the mail, postage prepaid, registered or certified mail; or (c) one (1) business day after deposit with a recognized overnight courier, postage prepaid.  Proof of sending any notice, demand, or payment shall be the responsibility of the sender.

|  |  |
|---|---|
| If to Buyer: | WVU at Parkersburg Foundation, Inc.<br>Attn: _____<br>300 Campus Drive<br>Parkersburg, WV 26104 |
| With Copy to: | Steptoe & Johnson PLLC<br>Attn: Brian D. Gallagher, Esq.<br>1000 Swiss Pine Way, Suite 200<br>Morgantown, WV 26501 |
|  | Steptoe & Johnson PLLC<br>Attn: Sarah C. Ellis, Esq.<br>707 Virginia Street East, Suite 1700<br>Charleston, WV 25301 |
| If to Receiver: | B. Riley Financial, Inc. d/b/a B. Riley<br>Attn: Michael Kain<br>11931 Smoketree Drive<br>North Chesterfield, VA 23236 |
| With Copy to: | Whiteford Taylor & Preston LLP<br>Attn: Brandy M. Rapp, Esq.<br>10 S. Jefferson St., Suite 1110<br>Roanoke, VA 24011 |
| If to Chapter 7 Trustee: | Thomas H. Fluharty, Trustee<br>408 Lee Avenue<br>Clarksburg, WV 26301 |

14

9.3 **Schedules.** The schedules referred to in this Agreement shall be construed with and as an integral part of this Agreement to the same extent as if set forth verbatim herein.

9.4 **Jurisdiction**. The parties to this Agreement acknowledge and agree that the State Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, except the Bankruptcy Court shall retain jurisdiction to resolve any matters involving the Bankruptcy Estate Purchased Assets. If the State Court determines that it lacks jurisdiction or otherwise declines to hear such matters, the parties agree that the state or federal courts located in the State of West Virginia shall have the exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement.

9.5 **Applicable Law.** The terms and conditions of this Agreement shall be governed, construed, interpreted and enforced in accordance with the domestic laws of the State of West Virginia, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of West Virginia or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of West Virginia.

9.6 **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and lawful assigns. No party may assign or delegate this Agreement without the prior written consent of the other parties, which shall not be unreasonably withheld or delayed. Any purported assignment or delegation of this Agreement, in whole or in part, without the prior written consent of the non-assigning parties shall be void and of no effect.

9.7 **Modification.** This Agreement cannot be amended, supplemented, altered or otherwise modified, unless done so in a writing, signed by a duly authorized representative of the party against whom such modification is sought to be enforced.

9.8 **Waiver.** No provision of this Agreement shall be waived by any party hereto, unless such waiver is in a writing, signed by a duly authorized representative of the party against whom such waiver is sought to be enforced. A delay in exercising a right shall not be deemed a waiver of such right. A waiver by either party of any breach or failure to comply with any provision of this Agreement by the other party shall not be construed as or constitute a continuing waiver of such provision or a waiver of any other breach of or failure to comply with any other provision of this Agreement.

9.9 **Severability.** The parties believe that every provision of this Agreement is effective and valid under applicable law, and whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid. If any portion of this Agreement is found to be invalid or unenforceable for any reason, any court or other tribunal adjudicating the rights and duties of the parties under this Agreement shall alter, modify or strike portions of the Agreement so that it shall be enforceable to the fullest extent permitted by law. If any provision of this Agreement is held, in whole or in part, to be invalid, the remainder of such provision and this Agreement shall remain in full force and effect, with the offensive term or condition being stricken to the extent necessary to comply with any conflicting law.

9.10  **No Third Party Beneficiaries**.  This Agreement is a contract solely between Buyer and OVU; no third party beneficiaries, including without limitation, employees and creditors of OVU, are intended hereunder and none shall be inferred herein; and no party other than Buyer or OVU may assert any right, make any claim or otherwise attempt to enforce any provision of or under this Agreement.

9.11  **Entire Agreement.**  This Agreement (including the schedules) constitutes the entire agreement between the parties with respect to the subject matter of this Agreement.  The provisions of this Agreement shall supersede all contemporaneous oral agreements, communications and understandings and all prior oral and written communications, agreements and understandings between the parties with respect to the subject matter of this Agreement.

9.12  **No Strict Construction.**  Notwithstanding the fact that this Agreement has been drafted or prepared by one of the parties, all of the parties confirm that each party and its counsel have reviewed, negotiated and adopted this Agreement as the joint agreement and understanding of the parties, and the language used in this Agreement shall be deemed to be the language chosen by the parties thereto to express their mutual intent.  No rule of strict construction shall be applied against any person.

9.13  **Headings.**  The headings used herein have been used for the convenience of the parties and are not to be used in construing this Agreement.

9.14  **Counterparts.**  This Agreement may be executed in one more counterparts (including via electronic communications), each of which shall be considered an original counterpart, and shall become a binding agreement when each party shall have executed one counterpart and delivered it to the other party.

9.15  **Recourse**.  This Agreement may only be enforced against, and any claim, action, suit or other legal proceeding based upon, arising out of, or related to this Agreement, or the negotiation, execution or performance of this Agreement may only be brought against, the entities that are expressly named as parties thereto, and not against the Receiver, the Chapter 7 Trustee, their owners, employees, or other representative of a party hereto, and then only with respect to the specific obligations set forth herein with respect to such party and only in the applicable Court.  Approval by the State Court for the transfer and sale of the Receiver's Purchased Assets is required before any action in law, equity or otherwise may be brought against the Receiver. Similarly, approval by the Bankruptcy Court for the transfer and sale of the Bankruptcy Estate Purchased Assets is required before any action in law, equity or otherwise may be brought against the Chapter 7 Trustee.  In no event shall the Receiver be in breach of, or default under, this Agreement as a result of following any order of the State Court. In no event shall the Chapter 7 Trustee be in breach of, or default under, this Agreement as a result of following any order of the Bankruptcy Court.  In no event shall the Receiver or Chapter 7 Trustee or any representative of either of them be liable for any punitive, incidental, consequential, special or indirect damages, including loss of future revenue or income, loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement, or diminution of value or any damages based on any type of multiple.  To the extent any recovery

for any amount of damages is sought, such recovery may only be funded from the assets of OVU, and not from the Receiver and/or Chapter 7 Trustee personally.

*(Signatures appear on the following page.)*

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Signing Date.

**BUYER:**

WVU AT PARKERSBURG FOUNDATION, INC.

By: _____

**OVU:**

B. RILEY FINANCIAL, INC. d/b/a B. RILEY, successor by merger to ABTV RECEIVERSHIP SERVICES, LLC, acting solely in its capacity as Special Receiver for Ohio Valley University, Inc.

By:_____
    P. Michael Kain

By:_____
    Thomas H. Fluharty, Chapter 7 Trustee for Ohio Valley University, Inc.

### SCHEDULE 2.1(a): CAMPUS REAL PROPERTY

### SOUTH CAMPUS

All those certain tracts or parcels of land situate in Parkersburg District Wood County, West Virginia and being more particularly described as follows:

**First Tract**:  Beginning at a stake at the southeast corner of the tract herein conveyed, which said stake is at the intersection of lands now or formerly owned by Graham Packing Company and Nesselrotte; thence N. 62° 17' W. 247.7 feet to the center line of Jug Run Road, thence continuing N. 62° 17' W. 2548.66 feet to a stake; thence N. 27° 47' E. 890 feet to a stake, thence S. 60° 37' E. 2566.93 feet to a stake; thence S. 12 W. 361.28 feet to the center line of said Jug Run Road; thence continuing S. 12° W. 485.72 feet to the place of beginning, containing 52.37 acres, more or less.

There is excepted therefrom a parcel heretofore conveyed to the State Road Commission by Deed of record in the Wood County Clerk's Office in Deed Book 492 at Page 362.

**EXCEPTING** from the above described premises the following described premises as conveyed by Ohio Valley University, Inc., fka Ohio Valley College, Inc., a West Virginia non-profit corporation, to Newberry Apartments L.P., an Ohio limited partnership, dated July 2, 2018, filed July 3, 2018, as recorded in Deed Book 1280, Page 466, Records of the Clerk of the County Commission of Wood County, West Virginia:

**SITUATE** ON THE WATERS OF LITTLE POND RUN AND BEING A PART OF HILL LAND LOTS NUMBER 11 AND 12 OF THE JOHN COOK ESTATE (ORDER BOOK 19, PAGES 227-234), PARKERSBURG DISTRICT, WOOD COUNTY, WEST VIRGINIA, AND BEING MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS:

**BEGINNING** AT A 5/8" CAPPED REBAR SET IN THE SOUTHERLY RIGHT OF WAY LINE OF SOUTH CAMPUS VIEW DRIVE, SAID 5/8" CAPPED REBAR SET BEING IN A COMMON EASTERLY LINE OF THE 5.70 ACRE PARKERSBURG HEALTH PARTNERS, LLC, TRACT (DEED BOOK 1032, PAGE 345 (SEE DEED BOOK 1047, PAGE 558 FOR ANNEXATION)), FROM WHERE A 1/2" REBAR FOUND AT THE NORTHEAST CORNER OF SAID 5.70 ACRE PARKERSBURG HEALTH PARTNERS, LLC, TRACT, BEARS N 24°49'03" E 10.29 FEET;

THENCE, WITH THE SOUTHERLY RIGHT OF WAY LINE OF SOUTH CAMPUS VIEW DRIVE, THE FOLLOWING FIVE (5) COURSES AND DISTANCES;

(1) THENCE S 62°29'23" E 178.57 FEET TO A P. K. NAIL FOUND;
(2) THENCE S 63°49'23" E 144.87 FEET TO A 5/8" CAPPED REBAR SET;
(3) THENCE S 60°32'23" E 97.69 FEET TO A 5/8" CAPPED REBAR SET;
(4) THENCE S 49°51'23" E 62.46 FEET TO A 5/8" CAPPED REBAR SET;
(5) THENCE S 65°08'23" E 59.05 FEET TO A P. K. NAIL SET;

THENCE S 38°12'37" W 317.88 FEET, LEAVING THE SOUTHERLY RIGHT OF WAY LINE OF SOUTH CAMPUS VIEW DRIVE AND BINDING ON THE OHIO VALLEY COLLEGE INC., TRACT (DEED BOOK 1069, PAGE 361 (FIRST TRACT AND THIRD TRACT)), TO A 5/8" CAPPED REBAR SET IN THE NORTHERLY LINE OF A 25 FOOT WIDE STRIP SHOWN AS PART OF L. M. MCDOUGAL'S ADDITION (PLAT BOOK 1, PAGE 38), PASSING A P. K. NAIL FOUND AT 5.57 FEET AND PASSING A CAPPED (ESI) REBAR FOUND AT 310.75 FEET;

THENCE N 63°03'00" W 547.82 FEET, WITH THE NORTHERLY LINE OF SAID L. M. MCDOUGAL'S ADDITION, TO AN 1/2" IRON PIPE FOUND AT THE SOUTHEAST CORNER OF SAID 5.70 ACRE PARKERSBURG HEALTH PARTNERS, LLC, TRACT;

THENCE, WITH SAID 5.70 ACRE PARKERSBURG HEALTH PARTNERS, LLC, TRACT, THE FOLLOWING FOUR (4) COURSES AND DISTANCES;

(1) THENCE N 12°51'01" E 129.11 FEET TO A 1/2" REBAR FOUND, PASSING A CAPPED (ESI) REBAR FOUND AT 7.13 FEET;
(2) THENCE N 40°38'51" E 124.12 FEET TO A 1/2" REBAR FOUND;
(3) THENCE N 88°31'30" E 82.67 FEET TO A 1/2" REBAR FOUND;
(4) THENCE N 24°49'03" E 42.80 FEET TO THE POINT OF BEGINNING;

CONTAINING 4.312 ACRES, PER AN ACTUAL FIELD SURVEY PERFORMED BY RANDALL R. CLINE II ON OR ABOUT 11/16/2017.

BEING A PART OF THE SAME TRACTS OR PARCELS OF LAND CONVEYED TO OHIO VALLEY COLLEGE INC., IN DEED BOOK 1069, PAGE 361 (PART FIRST TRACT AND PART THIRD TRACT).

SUBJECT TO ALL LEGAL RIGHTS OF WAY, EASEMENTS, AND RESTRICTIONS OF RECORD.

BASIS OF BEARINGS: WEST VIRGINIA STATE PLANE (NORTH ZONE).

Being Map 150, Parcel K1

**FURTHER EXCEPTING** from the above described premises the following described premises, as conveyed by Ohio Valley College, Inc., a West Virginia corporation, d.b.a. Ohio Valley University, to S.J. Ventures, Inc., a West Virginia corporation, dated June 8, 2006, as recorded in Deed Book 1098, Page 86, Records of the Clerk of the County Commission of Wood County, West Virginia (described as "Parcel 1" therein):

Situate and being in the District of Parkersburg, County of Wood, and State of West Virginia, more particularly described as follows:

2

BEGINNING at a reference point at the common corner of properties owned by S.J. Ventures, Inc., D.E. and T.A. Kniska, and the Wood County Development Authority; thence North 63° 41' 43" West 39.67 feet with the property line between S.J. Ventures, Inc. and the Wood County Development Authority, to the true beginning point; thence with the following bearings and distances: South 11° 30' 57" East 95.35 feet, with a curve to the left having a radius of 145 feet and a chord of South 23° 59' 5" East 62.78 feet; South 36° 29' 11" East 3.38 feet to the western right of way line of Wood County Route 4; South 34° 28' 52" West 42.31 feet with said right of way line; North 36° 29' 11" West 17.18 feet, with a curve to the right having a radius of 185 feet and a chord of North 24° 1' 21" West 79.86 feet; North 11° 30' 57" West 126.62 feet to the property of S.J. Ventures, Inc.; South 63° 41' 43" East 50.64 feet with said property line to the beginning point and containing 0.175 acres and being more fully described on the plat.

Being a part of the same property conveyed to the Grantor herein by deed of Wood County Development Authority, dated June 28, 2004, and recorded in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book 1069, at Page 361.

Being Map 150, Parcel E1A

**Second Tract**:

Beginning at the southeast corner of Chestnut Street and Charlotte Avenue, thence with the southerly line of Charlotte Avenue easterly 80 feet to a point on same; thence at right angles in a northeasterly direction across Charlotte Avenue and with the easterly line of Lot Nos. 87 and 106 of Andrews Addition to the northerly line of Forrest Avenue 490 feet; thence at right angles westerly with the northerly line of Forrest Avenue 50 feet, more or less, to a fence in the line of the Wentz property; thence with the easterly line of the Wentz property northerly 360 feet, more or less, to a point in the easterly line of Franklin Avenue and the southerly line of a tract heretofore conveyed by the Brookside Development Company to J. N. Boice by Deed dated July 16, 1931, and of record in the aforesaid Clerk's Office in Deed Book 205, at Page 126; thence S. 63° 56' E. 1445 feet, more or less, to a point in the easterly line of said property; thence at right angles, southwesterly 429 feet to a point; thence at right angles northwesterly 145 feet to a point; thence S. 27° 30' W. 951.8 feet to a point; thence southerly 330 feet to the northerly line of the property now owned by Roth; thence with the Roth line N. 63° 15' W. 600 feet, more or less, to a stake in the easterly line of Lot No 365; thence with the easterly line of Lot Nos. 365, 364, 363, 362, 361 and 360 in a northerly direction 713 feet, more or less, to a stake in the southeasterly corner of Lot No. 359; thence with the common line of Lot Nos. 359 and 360 across Edgewood Drive South and with the southerly line of Lot Nos. 372, 69, 68, 67, 578 feet, more or less, to Chestnut Street; thence with the easterly line of Chestnut Street northerly 155 feet to Charlotte Avenue, the place of beginning, containing forty (40) acres, more or less, together with all the right, title and interest of the parties to all of the intervening streets and 5 feet and 15 feet strips reserved, as indicated on a map of said property.

3

There is hereby excepted from this conveyance those certain parcels of real estate heretofore conveyed to other parties as follows: (1) A parcel of approximately four (4) acres to the Board of Education of the County of Wood, by Deed dated January 25, 1954, of record in the aforesaid Clerk's office in Deed Book 374, at Page 133, and (2) those certain lots known and numbered as Lots 67, 68, 69 and 372.

There is further excepted from this conveyance two parcels heretofore conveyed by the party of the first part to Ohio Valley College Investment Corporation, Inc., as follows: (1) 11.76 acres by Deed dated January 4, 1973, recorded in Deed Book 616, at page 403 (included in said 11.76 acres is a smaller parcel measuring 59.2 feet by 146 feet conveyed to the party of the first part by Deed recorded in Deed Book 426, at page 296); (2) 5.82 acres by Deed dated January 4, 1973, and recorded in Deed Book 616, at page 406.

**Third Tract**: Being all of Lot No. Ten (10), containing four (4) acres and eighty (80) poles; Lot No. Eleven (11), containing four (4) acres and twenty (20) poles and Lot No. Twelve (12), containing four (4) acres and twenty (20) poles, of what is known as the John Cook Estate, Hill Land, and of record in the office of the Clerk of the County Commission of Wood County, West Virginia.

**Fourth Tract**:

Parcel One: Beginning at a stone at center of the old County Road (sometimes called the Williamstown Road) at a corner of lands formerly owned by Olin V. Neal, being corner of Lot No. 7 of the Hardin Neal Estate, and running thence with the center of said road N. 16° 30' E. 28.2 poles to a stake in the upper line of the said Hardin Neal; thence with said line S. 63° 15' E. 100 poles to a stone; thence S. 16° 30' W. 30 poles to a stone in the line of said Lot No. 7; thence with said line N. 62° 37' W. 100 poles to the place of beginning, containing Eighteen (18) acres, more or less.

Parcel Two: Beginning at a stone in the northeast corner of the above mentioned tract, and running thence S. 63° 15' E. 63 poles to a stone; thence S. 16° 30' W. 30.63 poles to a stone and wire post; thence N. 62° 27' W. 53 poles to a stone at the southeast corner of the above mentioned tract; thence N. 16° 30' E. 30 poles to the place of beginning, containing ten (10) acres, more or less.

There is excepted from the above described real estate those two certain tracts of land, the first known as Ohio Valley College Addition to Vienna, Section "A", a plat of which is of record in the aforesaid Clerk's office in Plat Book No. 11, at page 40, and in Plat Book No. 12, at page 5, and a plat of a Re-division of a part thereof of record in Plat Book No, 12, at page 11, and the second known as Ohio Valley College Addition to Vienna, Section "B", a plat of which is of record in the aforesaid Clerk's office in Plat Book No. 12, at page 40, and that certain parcel situate on Thirteenth Avenue heretofore conveyed by the party of the first part unto Irene M. Taylor by Deed dated March 21, 1960, of record in the aforesaid Clerk's office in Deed Book 440, at page 312.

4

**Fifth Tract**:  Beginning at an iron stake in the old fence line, thence S. 66 1/2° E. 99 feet to Jug Run Road; thence with said Jug Run Road 2 calls, S. 41° W. 31 feet and S. 31° W. 198 feet to a point; thence leaving said road and running in a westerly direction 16-1/2 feet, more or less, to the old fence line, being in the easterly line of lands now owned by the first party, thence with said old fence line N. 11° 42' E. 237 feet to the place of beginning, containing one-fourth (1/4) acre, more or less, and being a small triangular parcel of land carved out of Parcel Two as described in that certain Deed from Graham Packing Company, Inc., a corporation, to D. P. Boord and Dixie Boord, husband and wife, which said Deed was dated the 9th day of October, 1953, of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book 371, at page 527.

There is excepted from the aforesaid tracts of land the following:

(1)  Beginning at a point bearing N. 18° 29' E. 152.53 feet from the common line of property of Wood County Development Authority and property of the Board of Trustees of the Grand Lodge of Ancient, Free and Accepted Masons of West Virginia; thence N. 71° 31' W. 50 feet to a one inch pipe; thence N. 18° 29' E. 150 feet to a one inch pipe; thence S. 71° 31' E. 100 feet to a one inch pipe; thence S. 18° 29' W. 150 feet to a one inch pipe; and thence N. 71° 31' W. 50 feet to the place of beginning, containing 0.344 acre, more or less.   Title reference - Deed Book 701, at page 266.

(2)  A right of way of ingress and egress to and from the aforesaid parcel to the Masonic Home property, and for the installation, maintenance, inspection or replacement of water lines and appurtenances used in connection with a water tank to be located upon the aforesaid parcel, said right of way to be 25 feet in width, 12-1/2 feet on either side of a center line extending from the aforesaid common line of Wood County Development Authority and Masonic Home property, N. 18° 29' E. 152.53 feet, more or less, to the southerly line of the 0.344 acre parcel.

(3)  An easement for the occasional flowage of overflow and excess waters, extending from the 0.344 acre parcel and following the natural drainage contours of the land and natural watercourse in a southeasterly direction to Little Pond Run.

(4)  A right of way for ingress and egress and for the installation, maintenance, inspection and replacement of water lines and appurtenances used in connection with a water tank, or tanks, to be located upon said 0.344 acre parcel of land.  Said right of way shall be approximately 25 feet in width plus additional widths as may be necessary for cuts and fills and shall extend from said 0.344 acre parcel in a general northeasterly direction to a roadway designated as Aurora Drive on a topographical map prepared for Ohio Valley College, and continuing thence generally with Aurora Drive around the easterly side of a knoll and thence to 12th Street.

(5)  The tract or parcel of land containing 57.156 acres, more or less, conveyed by Wood County Development Authority to Ohio Valley College, Inc. by a Deed dated July 26, 1997 and of record in said Clerk's office in Deed Book 972, at page 549.

5

(6)   The tract or parcel of land and easements conveyed by Wood County Development Authority, and others, to Agape Housing, Inc. and the City of Vienna by a Deed dated May 6, 1985 and of record in said Clerk's office in Deed Book 819, at page 253.

(7)   Two (2) tracts or parcels of land containing .08 ac. and .168 ac. and easements conveyed by the Wood County Development Authority to S. J. Ventures, Inc. by a Deed dated January 8, 1987 and of record in said Clerk's office in Deed Book 844, at page 186.

PRIOR INSTRUMENT REFERENCE:   Warranty Deed from Wood County Development Authority to Ohio Valley College, Inc., dated June 28, 2004, filed June 29 2004, as recorded in Deed Book 1069, Page 361, Records of the Clerk of the County Commission of Wood County, West Virginia.

## NORTH CAMPUS

**Tract One**:   All that certain tract or parcel of land situate in the City of Vienna, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

Beginning at a concrete monument (found) at the southerly corner of Florence A. Atkinson (reference Deed Book 571, page 488).

Thence, with the interior of the parent tract, twelve (12), courses and distances,
S. 89° 18' 25" E. 203.40 feet to a point,
S. 51° 30' 05" E. 74.00 feet to a point,
N. 38° 29' 55" E. 70.00 feet to a point,
S. 51° 30' 05" E. 98.23 feet to a point,
S. 07° 12' 00" E. 268.41 feet to a point in asphalt driveway, said point being N. 79° 37' 42" E., 150.2 feet from the northeasterly corner of Ohio Valley College, Inc. existing Building, formerly Saint Joseph's Seminary Main Building,
S. 83° 26' 40" W. 328.90 feet to a point,
S. 06° 30' 05" E. 23.86 feet to a point,
S. 83° 31' 00" W. 120.00 feet to a point,
N. 06° 30' 05" W. 43.03 feet to a point,
S. 83° 29' 55" W. 275.50 feet to a point, said point being N. 80° 28' 24" W. 105.03 feet from the northwesterly corner of Ohio Valley College, Inc. Existing Building, formerly Saint Joseph's Seminary Main Building, N. 06° 30' 05", 190.00 feet to a point, N. 59° 11' 10" E. 381.92 feet to the point of beginning and containing 5.110 acres more or less as surveyed by James DeBrular.

Being part of the same property (Deed Parcels 6, 8 and 9), conveyed to Ohio Valley College, Inc. by Most Reverend Bernard W. Schmitt, Bishop, by a Deed dated November 17, 1997 and of record in the office of the Clerk of the County Commission of Wood County West Virginia in Deed Book 975, page 598.

Together with a nonexclusive easement for ingress to and egress from said tract or parcel of land over and across all roads and driveways now or hereafter located on the property now owned by Ohio Valley College, Inc.

**Tract Two**:

All those certain tracts or parcels of land situate in Parkersburg and Vienna Districts, Wood County, West Virginia, and being more particularly bounded and described as follows:

Parcel One:  BEGINNING at an iron pin in an old original survey (described in deed from O. B. Wiles, *et ux*. to C. C. Bee, dated December 31, 1915, recorded in the County Clerk's office of Wood County, West Virginia, in Deed Book 165, at page 515) at the extreme northwesterly end of a strip of land purchased by Bee from said O. B. Wiles; running thence S. 64 ½ E. 220 poles to a stake; thence S. 10 ½ W. 11 1/3 poles, more or less, to the original line in a former  survey above referred to; thence N. 64 ½ W. 223.5 poles, more or less, to a stake on the bank of a run, in the line of the original survey; thence N. 27 E., with the line of the original survey, 11 1/3 poles,

7

more or less, to an iron stake or pin to the place of beginning. (The southerly line of the old survey having been changed); and being the same real estate conveyed to James B. Wiblin by C. C. Bee, widower, by deed dated November 15, 1945, recorded in the County Clerk's office of Wood County, West Virginia, in Deed Book No, 275, at page 124.

Parcel Two:   BEGINNING at a concrete monument corner to lands of D. W. McConaha in the line of R. E. Snyder, and 28 feet, more or less, from the bottom of a steep bank across a run; thence South 59° 15' West 186.96 feet to a concrete monument; thence North 08° 29' East 184.00 feet to a concrete monument; thence South 76° 27' East 145.97 feet to a large oak tree 3.2 feet in diameter; thence South 09° 05' West 52.86 feet to the place of beginning, and being all the remaining land in a Tract described in Deed Book 374, at page 560, and also described as Tract P-1 on the Parkersburg District Tax Map Block 110.

Parcel Three:   BEGINNING at a stone in the line of I. S. Dotson and H. Dixon and running thence in a westerly direction 40 rods to a stone in the line of I. S. Dotson and Godall Dare; thence in a northerly direction with said line 20 rods to a stone in said line; thence in an easterly direction 40 rods to a stone in said first line; thence with said first line in a southerly direction 20 rods to the place of beginning.

Parcel Four:   BEGINNING at a point in the northeasterly corner of the tract of which the real estate herein described is a part, said beginning point being also the northwesterly corner of a tract owned by the heirs of Sally Kenney and in a line of a tract now or formerly owned by Nesselroade; thence running in a northwesterly direction with the line of Nesselroade, 157.5 feet to a point in the easterly line of a tract formerly owned by Atkinson; thence running in a southwesterly direction with the line of Atkinson and a tract formerly owned by Jameson, 330 feet, more or less, to a point, the southeasterly corner of said Jameson tract; thence running in a northeasterly direction, 157 feet, more or less, to a point; the southwesterly corner of said Kenney tract; thence with said Kenney line in a northeasterly direction, 20 poles to the place of beginning; and being a part of a tract of 1 acre 133 square rods lying west of and abutting the lands of the said Sally Kenney heirs on the east and the lands formerly owned by Jameson and Atkinson on the west; and being a part of the same real estate conveyed to the said Leslie P. McConaha by Ernest Ogden by deed dated February 24, 1954, recorded in the Office of the Clerk of the County Court of Wood County, West Virginia, in Deed Book 374, page 560.

Parcel Five:   BEGINNING at a stone in the Grogg and Lininger line in the rear line of the McHugh Farm, corner to land of Sarah A. Davis, and running thence N. 66-1/2 W, along the line of said land of Sarah A. Davis, 128 poles to a stake; thence at right angles to the line of Sarah A. Davis (crossing the McHugh-Tavenner line at right angles) 43.82 poles, more or less, to the lands of Fischer (formerly conveyed to James Tavenner by Bettie Tavenner, *et al.* by deed dated January 27, 1898, recorded in Deed Book 95, at page 398); thence along the rear line of the 125-acre tract of which Isaac Tavenner died seized, to the northeast corner of lands conveyed to C. H. Shattuck, J. M. Jackson, Jr., and L. N. Tavenner by William McHugh, *et al.* by deed dated March 27, 1901, recorded in Deed Book 114, page 3; and along the rear line of said lands so conveyed by said McHugh to Shattuck, *et al.* to the place of beginning, being the same real estate granted and conveyed unto the said parties of the first part by Fred L. Morlan, *et al.*, by deed

8

dated March 19, 1958, recorded in the Office of the Clerk of the County Court of Wood County, West Virginia, in Deed Book 418, at page 485.

Parcel Six:  BEGINNING at a point in the dividing line between the William Bel Farm and the Frank Jenkins and Isaac Tavenner farms at a point 2596 feet N. 63° 24' W. from the southerly corner of the William Bell farm and running thence N. 47° 31' E. 337.5 feet, more or less, to a stake; thence S. 63° 17' E. 2400 feet, more or less, to a point in the back or easterly line of the William Bel1 farm; thence with the back or easterly line of the William Bell farm, S. 13° 52' W. 337 ½ feet, more or less, to a point; the southerly corner of the William Bell farm; thence N. 63° 24' W. with the southerly line of the William Bell farm 2596 feet, more or less, to the place of beginning.

Parcel Seven:  BEGINNING at a point which is the southeast corner of Lot No. 106 of Shattuck, Jackson, Tavernier & McHugh's Addition as shown on plat of said Addition of record in the Office of the Clerk of the County Court of Wood County, West Virginia, in Plat Book No. 2, pages 6 and 7; thence N. 26° 45' E. along the line of said Lot No. 106 and Lot No. 56 of said Addition, 22.27 poles to a stake, corner to said Lot No. 56; thence S. 60° 45' E. 10.82 poles to a stake; thence N. 34° E. 10.98 poles to a stake; thence S. 63° 22' E. 14.69 poles to a stake; thence N. 34° E. 10.98 poles to a stake; thence S. 63° 22' E. 51.13 poles to a stone; thence S. 26° 48' W. 43.62 poles to a stone in a line of lands now or formerly owned by Sarah A. Davis; thence N. 63° 22' W. 78.22 poles to the point of beginning.

Parcel Eight:  BEGINNING at a sycamore on the common line between this land and the land of William Bell; thence S. 26° 29' W. 362 feet to a stake in the dividing line between this land and that of L. N. Tavenner, *et al*. and a corner to lands of James Tavenner; thence with said dividing line S, 63° 31' E. 3,033 feet to a stake in the old line and on the south by a small run and near a large white oak marked fore and aft (old marks); thence with said line N. 8° E. 382 feet to a stake near a white oak and hickory pointers, a corner to land of William Bell; thence with the aforesaid common line with Bell N. 63° 31' W. 3000 feet to the beginning.

Excepting and reserving from the above described tract, however, a certain parcel bounded and described as follows:

BEGINNING at a point, the northwesterly corner of the tract hereinbefore described, running thence easterly with the common line of said tract and the line of B. F. Jameson tract, 200 feet to a point; thence running in a southerly direction to a point in the southerly line of the tract hereinbefore described, said point being 200 feet easterly from the southwesterly corner of the tract hereby conveyed; thence running with the southerly line of the tract hereby conveyed, in a westerly direction, 200 feet to the southwesterly corner of said tract; thence running with the westerly line of said tract in a northerly direction, 362 feet, more or less, to the place of beginning.

Parcel Nine:  BEGINNING at an iron pin at the foot of the hill in the line of an old cross fence just back of the old Ben Davis Orchard, said beginning point being a common corner to the tract of land of 17.21 acres hereby conveyed and another adjoining 18.65 acre tract as shown on a plat of acreage made of the William Bell Estate by L. G. Merrill, Civil Engineer, in July 1936; thence

S. 63° 24' E. and with the dividing line between said two tracts, 2,510 feet to a point, thence N. 13° 52' E. 321.5 feet to a point, common corner to the tract hereby conveyed and another 15.87 acre tract adjoining; thence N. 63° 24' W. and with the dividing line between the said last two mentioned tracts, 2,285 feet to an iron pin in the line of the old cross fence, as aforesaid; thence S. 52° 52' W. 348.36 feet to the place of beginning.

Excepting and reserving from the above described tract, a certain tract or parcel located on the northwesterly end thereof, bounded and described as follows:

BEGINNING at the northwesterly corner of the tract hereinbefore described; thence running S. 23° 24' E. 310 feet to a point; thence running S. 26° 36' W. 312.8 feet to a point in the common line of the above described tract and a tract owned by B. F. Jameson; thence with the Jameson tract, N. 63° 24' W. 467 feet, more or less, to the southwesterly corner of the tract hereinbefore described; thence with the westerly line of said tract N 53° 30' E. 348.38 feet to the place of beginning.

THERE IS ALSO EXCEPTED AND RESERVED from said tracts or parcels of land that part or portion thereof conveyed unto the St. Joseph Hospital by the Diocese of Wheeling-Charleston by the terms of a deed dated May 21, 1991 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book 896, at page 411.

There is further excepted and reserved therefrom all that certain tract or parcel of land situate in the City of Vienna, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

Beginning at a concrete monument (found) at the southerly corner of Florence A. Atkinson (reference Deed Book 571, page 488).

Thence, with the interior of the parent tract, twelve (12), courses and distances,
S. 89° 18' 25" E. 203.40 feet to a point,
S. 51° 30' 05" E. 74.00 feet to a point,
N. 38° 29' 55" E. 70.00 feet to a point,
S. 51° 30' 05" E. 98.23 feet to a point,
S. 07° 12' 00" E. 268.41 feet to a point in asphalt driveway, said point being N. 79° 37' 42" E. 150.22 feet from the northeasterly corner of Ohio Valley College, Inc. Existing Building, formerly Saint Joseph's Seminary Main Building S. 83° 26' 40" W. 328.90 feet to a point,
S. 06° 30' 05" E. 23.86 feet to a point,
S. 83° 31' 00" W. 120.00 feet to a point,
N. 06° 30' 05" W. 43.03 feet to a point,
S. 83° 29' 55" W. 275.50 feet to a point, said point being N. 80° 28' 24" W. 105.03 feet from the northwesterly corner of Ohio Valley College, Inc. Existing Building, formerly Saint Joseph's Seminary Main Building, N. 06° 30' 05", 190.00 feet to a point, N. 59° 11' 10" E. 381.92 feet to the point of beginning and containing 5.110 acres more or less as surveyed by James DeBrular.

Being part of the same property (Deed Parcels 6,8 and 9), conveyed to Ohio Valley College, Inc. by Most Reverend Bernard W. Schmitt, Bishop, by a Deed dated November 17, 1997 and of record in the office of the Clerk of the County Commission of Wood County West Virginia in Deed Book 975, page 598.

Together with a nonexclusive easement for ingress to and egress from said tract or parcel of land over and across all roads and driveways now or hereafter located on the property now owned by Ohio Valley College, Inc.

PRIOR INSTRUMENT REFERENCE:  Warranty Deed from Most Reverend Bernard W. Schmitt, Bishop of The Roman Catholic Diocese of Wheeling-Charleston, to Ohio Valley College, Inc., dated November 17, 1997, filed November 20, 1997, as recorded in Deed Book 975, Page 598, Records of the Clerk of the County Commission of Wood County, West Virginia.

**Tract Three**:

Parcel One:  All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a stake in the County Road and which stake is located at the Northeast corner of property owned by the Ohio Valley College, Inc.; thence S. 60° 37' E. along the line of the Ohio Valley College property, 2420.93 feet to a point; thence N. 28° 42' E. 461.05 feet; thence N. 61° 04' W. 176.02 feet to a stake; thence N. 26° 21' E. 448.48 feet to a stake; thence S. 62° 38' E. 2318 feet to a stake; thence S. 12° W. 1040 feet to the point of beginning, containing 52 acres, more or less and being a part of the same tracts or parcels of land conveyed unto S. J. Ventures, Inc., a West Virginia corporation by St. Joseph's Hospital of Parkersburg, a non-profit West Virginia corporation, by a deed dated October 8, 1985 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia in Deed Book 825, at page 362.

**EXCEPTING AND RESERVING THEREFROM** those certain tracts or parcels of land described as containing 0.011 acres, 0.012 acres and 0.035 acres, more or less in a deed dated March 24, 1987, and of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book 847, at page 24, from S. J. Ventures, Inc., a West Virginia corporation to D. E. Kniska and T. A. Kniska, his wife.

**ADDITIONALLY EXCEPTING AND RESERVING THEREFROM** all that certain tract or parcel of land containing 5.115 acres, together with all appurtenant easements described in and covered by a Ground Lease from S. J. Ventures, Inc. to West Virginia Rehabilitation Services, Inc., a Pennsylvania corporation, dated December 1, 1986 and of record in said Clerk's office in Deed Book 842, at page 658.  This conveyance is also being made subject and subordinate to all of the rights of the Lessee pursuant to the terms of the Ground Lease described in the preceding sentence.

11

Said tract or parcel of land described as, "Parcel No. 1" is a part or portion of property conveyed to Ohio Valley College, Inc. by S. J. Ventures, Inc. and St. Joseph's Hospital of Parkersburg by a Deed dated February 4, 1998 and of record in said Clerk's office in Deed Book No, 978, at page 134. This Deed contains the following provision:

> "By its acceptance of this deed, the party of the second part hereby assumes all of the obligations of S. J. Ventures, Inc., one of the parties of the first part to maintain an easement area appurtenant to said hereinabove described "Tract 1" as set forth in Section 28 of that Certain Ground Lease dated December 1, 1986 and of record in said Clerk's office in Deed Book 842, at page 658, from S. J. Ventures, Inc., as Lessor to West Virginia Rehabilitation Services, Inc., as Lessee."

**FURTHER EXCEPTING** from the above described premises the following described premises, as conveyed by Ohio Valley College, Inc. (d.b.a. Ohio Valley University) to John M. Migliore and Diane H. Migliore, dated October 10, 2005, filed October 19, 2005, as recorded in Deed Book 1088, Page 606, Records of the Clerk of the County Commission of Wood County, West Virginia (described as "Tract 2" therein):

> Situated in the District of Parkersburg, County of Wood and State of West Virginia, and being more particularly bounded and described as follows:

> Beginning at a concrete monument, the southeasterly corner of Lot 34 of Wyndemere Subdivision (Plat Book 23, Page 17),

> Thence with the easterly line of Lot 34, two (2) courses:

> North 25° 29' 00" East 62.54 feet;
> North 25° 24' 43" East 53.46 feet to an iron rod;

> Thence with the interior of the parent property (Deed Book 978, Page 134), the following two (2) courses:

> South 64° 55' 07" East 109 feet to an iron rod
> South 25° 27' 02" West 118.31 feet to an iron rod in the common line of the parent property and Ohio Valley College, Inc. (Deed Book 972, Page 549);

> Thence with said common line North 63° 42' 10" West 109.01 feet to the point of beginning and containing 12,676 square feet, more or less.

> Being part of the same premises conveyed to Ohio Valley College, Inc. in Deed Book 978, Page 134, Records of the Clerk of the County Commission of Wood County, West Virginia.

> Being Map 150, Parcel E8

**FURTHER EXCEPTING** from the above described premises the following described premises, as conveyed by Ohio Valley College, Inc., a West Virginia corporation, d.b.a. Ohio Valley University, to S.J. Ventures, Inc., a West Virginia corporation, dated June 8, 2006, as recorded in Deed Book 1098, Page 86, Records of the Clerk of the County Commission of Wood County, West Virginia (described as "Parcel 2" therein):

> Situated in the District of Parkersburg, County of Wood and State of West Virginia, and being more particularly bounded and described as follows:
>
> Reference to a common corner to the properties of S.J. Ventures, Inc, D.E. and T.A. Kniska, and the Wood County Development Authority;
>
> Thence North 63° 41' 43" West, 59.85 feet, along the property line between S.J. Ventures, Inc. and the Wood County Development Authority to the beginning point on the centerline of the Access Road, said point being at Station 6+88.13;
>
> Thence beginning a right of way 50 feet in width, running 25 feet left and 25 feet right and parallel to the centerline and continuing North 11° 30' 57" West 623.25 feet to centerline P.C. (point of curve) Station 13+11.38;
>
> Thence with a curve to the left having a radius of 60.00 feet, a curve length of 564.70 feet and a chord length of 544.09 feet to the P.T. (point of tangent) Station 18+76.08;
>
> Thence North 65° 26' 28" West 207.93 feet with said centerline to Station 20+84, the end of the Access Road Right of Way, said right of way containing 1.602 acres.

Being Map 150, Parcel E9

Parcel Two:  All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a common corner to the properties owned by S. J. Ventures, Inc. and D. E and T. A. Kniska, as shown on the "Plat Showing The Land Acquired by S. J. Ventures, Inc. From Ohio Valley College, Parkersburg District, Wood County," prepared by Rude and Associates, Inc., said plat being of record in said Clerk's office; thence with the property line between S. J. Ventures, Inc. and D. E. and T. A. Kniska, S. 12° 10' 20" W. 54.23 feet to the beginning point; thence S. 11° 08' 10" E. 22.61 feet to a point on the property line between S. J. Ventures, Inc. and D.E. and T. A. Kniska; thence N. 66° 10' 40" W. 9.14 feet; thence N. 12° 10' 20" E. 18.89 feet to the place of beginning, and containing 0.002 acre, and designated as "Tract B" on a plat attached to the hereinafter described deed dated March_____ , 1987, and being the same tract or parcel of land conveyed unto S. J. Ventures, Inc., a West Virginia corporation, by D. E. Kniska and T. A, Kniska, his wife, by a deed dated March_____, 1987 and of record in said Clerk's office.

13

<u>Parcel Three</u>:  All those two (2) certain tracts or parcels of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

<u>Tract One</u>:  BEGINNING at the common corner to property now or formerly owned by D. E. and T. A. Kniska and the Wood County Development Authority, thence with the following bearings and distances; South 66° 1' 40" East, 61.00 feet to the westerly right of way line of Wood County Route 4; South 47° 15' 31" West, 15.40 feet with said right of way line; South 33° 12' 40" West, 76.61 feet with said right of way line; North 36° 29' 11" West, 17.18 feet; with a curve to the right having a radius of 185 feet and a chord of North 34° 9' 31" West, 15.03 feet; North 12° 10' 20" East, 74.58 feet to the beginning point, and containing 0.080 acres, more or less.

<u>Tract Two</u>:   BEGINNING at the common corner to properties now or previously owned by S. J. Ventures, Inc., a West Virginia corporation, D. E. and T. A. Kniska and the Wood County Development Authority, thence with the following bearings and distances:  South 12° 10' 20" West, 73.12 feet; South 12° 10' 20" West, 74.85 feet; with a curve having a radius of 185 feet and a chord of North 21° 41' 42" West, 65.12 feet; North 11° 30' 57" West, 126.62 feet to the property line of S. J. Ventures, Inc., and the Wood County Development Authority, South 63° 41' 43" East, 90.31 feet with said property line to the beginning point, and containing 0.168 acres, more or less, and being more fully described on the Plat attached to the hereinafter described  deed dated January 8, 1987 and of record in said Clerk's office in Deed Book 844, at page 186.

Said Tract I and Tract II are the same tracts or parcels of land conveyed unto S. J. Ventures, Inc., a West Virginia corporation, by the Wood County Development Authority, a public corporation, by a deed dated January 8, 1987 and of record in said Clerk's office in Deed Book 844, at page 186.

THERE IS HEREBY CONVEYED TOGETHER WITH said Tract I and Tract II the easement which was also conveyed unto S. J. Ventures, Inc., a West Virginia corporation, by the terms of the deed dated January 8, 1987 described in the preceding paragraph and which was described therein as Tract III, as follows:

<u>Tract Three</u>:  BEGINNING at the common corner to properties now or previously owned by S. J. Ventures, Inc., and the Wood County Development Authority, thence with the following bearings and distances, South 11°30' 57" East, 126.62 feet with a curve to the left having a radius of 185 feet and a chord of South 21° 41'  42" East, 65.12 feet; South 57° 23' 57" West, 33.69 feet; North 78° 41' 24" West, 15.30 feet; North 13° 19' 28" West, 39.05 feet;  North 00° 23' 44" East, 151.70 feet; North 11° 30' 57" West, 12.50 feet to said property line; South 63° 41' 43" East, 5.00 feet with said property line to the beginning point, and containing 0.107 acres, more or less, and being more fully described on a Plat attached to the hereinabove described deed dated January 8, 1987 and of record in said Clerk's office in Deed Book 844, at page 186.

There is expressly excepted herefrom that certain easement and right of way previously granted by The Wood County Development Authority and Ohio Valley College, Inc., unto S. J. Ventures, Inc. by deed dated the 3rd day of November, 1986 and of record in said Clerk's office in Deed Book 842, at page 651, more fully described as follows:

SITUATE AND BEING in the District of Parkersburg, County of Wood and State of West Virginia, more particularly described as follows:

BEGINNING at a reference point at the common point of properties owned by S. J. Ventures, Inc., D. E. and T. A. Kniska, and the Wood County Development Authority, thence North 63° 41' 43" West, 39.67 feet with the property line between S. J. Ventures, Inc., and the Wood County Development Authority, to the true beginning point; thence with the following bearings and distances; South 11° 30' 57" East, 95.35 feet, with a curve to the left having a radius of 145 feet and a chord of South 23° 59' 5" East, 62.78 feet; South 36° 29' 11" East, 3.38 feet to the westerly right of way line of Wood County Route 4; South 34° 28' 52" West, 42.31 feet with said right of way line; North 36° 29' 11" West, 17.18 feet, with a curve to the right having a radius of 185 feet and a chord of North 24° 1' 21" West, 79.86 feet; North 11° 30' 57" West, 126.62 feet to the property of S. J. Ventures, Inc.; South 63° 41' 43" East, 50.64 feet with said property line to the beginning point, and containing 0.175 acres, more or less.

Parcel Four: All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a hub located at the easterly end of 14th Street in the City of Vienna, thence S. 61° 15' E. 1273 feet to a hub located on the line of a tract of land recently acquired by the St. Joseph's Hospital of Parkersburg from Harry F. Davis and Florence B. Davis by deed dated the 16th day of June, 1966, and of record in said Clerk's office in Deed Book 518, at page 40; thence along the line of said St. Joseph's Hospital of Parkersburg property so acquired N. 27° 30' E. 430.5 feet to another hub; thence N. 62° W. 1247 feet, more or less, to a hub located in the westerly end line of 15th Street in the City of Vienna; thence S. 31° 45' W. 416.9 feet to the point of beginning, containing 12.40 acres, more or less, and being also a part or portion of the property conveyed unto S. J. Ventures, Inc., a West Virginia corporation, by the terms of the hereinabove described deed dated October 8, 1985.

**Tract Four**: All that certain tract or parcel of land situate in Parkersburg District, Wood County, West Virginia, more particularly bounded and described as follows:

BEGINNING at a point in a stream, said point being located on the common property line between Tract "K" and Tract "E", 360.24 feet in a N. 65 degrees 56 minutes 37 seconds W. direction from a concrete monument at the northeasterly boundary of Tract "E"; thence N. 65 degrees 56 minutes 37 seconds W. 1,241.70 feet with said common line to an iron pipe, passing an iron pipe reference pipe located on said line 7.00 feet from the beginning and located on the bank of the stream; thence N. 24 degrees 03 minutes 23 seconds E. 188.00 feet to an iron pipe located in the common line between Tract "K" and Tract "8", said point being the northwesterly corner of the 5.3059 Acre Tract herein described; thence S. 65 degrees 56 minutes 37 seconds E.

15

1,217.00 feet to a point in the stream located in the common line between Tract "K" and Tract "8" and passing an iron pipe reference pipe at 1,207.00 feet; thence S. 16 degrees 33 minutes 18 seconds W. 189.62 feet to the point of beginning, containing 5.3059 acres, more or less, and being the same tract or parcel of land conveyed unto St. Joseph's Hospital of Parkersburg, a West Virginia non-profit corporation, by the Most Reverend Bernard W. Schmitt, Bishop of the Roman Catholic Diocese of Wheeling-Charleston by a Quit-Claim Deed dated November 28, 1994 and of record in the office of the Clerk of the County Commission of Wood County, West Virginia in Deed Book 938, at page 741.

PRIOR INSTRUMENT REFERENCE:  Warranty Deed from S. J. Ventures, Inc., a West Virginia corporation, and St. Joseph's Hospital of Parkersburg, a West Virginia Not-for-Profit corporation, to Ohio Valley College, Inc., dated February 4, 1998, filed February 11, 1998, as recorded in Deed Book 978, Page 134, Records of the Clerk of the County Commission of Wood County, West Virginia.

## <u>THE SNYDER ACTIVITY CENTER</u>

All that certain lot, tract or parcel of land situate, lying and being in the District of Parkersburg, County of Wood and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at an iron pin in the northerly line of Jug Run (Briscoe) said point being the southeasterly property corner of Kenneth McVay, of record in the office of the Clerk of the County Commission of Wood County, West Virginia, in Deed Book 804, at page 385, said point also being the northeast property corner of the parcel to be herein described, said parcel previously described in Deed Book 848, at page 779; thence along the north line of the above mentioned road, South 39° 15' 01" West 203.03 feet to a point; thence along the north line of said road, South 37° 15' 01" West 206.90 feet to a pk nail; thence leaving said road North 66° 01' 40" West 40.87 feet to a drill hole; thence South 47° 15' 31" West 15.40 feet to a drill hole; thence North 55° 44' 15" West 41.74 feet to an iron rod; thence North 11° 08' 10" West 64.73 feet to a drill hole; thence North 12° 10' 20" East 26.44 feet to an iron rod; thence North 10° 02' 43" East 114 feet to an iron rod; thence South 79° 57' 17" East 11.03 feet to an iron rod; thence North 09° 25' 17" East 211.98 feet to an iron pipe; thence along the southerly line of the above mentioned McVay property South 67° 16' 43" East 301.77 feet to the place of beginning, containing 1.85 acres, as shown on a plat thereof prepared by James L. Debrular, LLS, attached to a Deed of record in said Clerk's office in Deed Book 897, at page 293.

PRIOR INSTRUMENT REFERENCE:  Warranty Deed from Parkersburg Distributing Co., a West Virginia corporation, to Ohio Valley College, Inc., dated June 24, 1991, filed June 24, 1991, as recorded in Deed Book 897, Page 293, Records of the Clerk of the County Commission of Wood County, West Virginia.

17

## SCHEDULE 2.1(b): BANKRUPTCY ESTATE REAL PROPERTY

**PARCEL ONE:**

All those certain lots, tracts or parcels of land, situate, lying and being in the District of Lubeck, County of Wood, and State of West Virginia, more particularly bounded and described as follows:

BEING Lots Nos. 67 and 68, Section 1, of Lake Washington Heights Addition, as shown on a plat thereof made by L. G Merrill, Civil Engineer, dated July 12, 1956, recorded in the Office of the Clerk of the County Commission of Wood County, West Virginia, in Plat Book 9, at Page 69, to which plat reference is hereby made for a more particular description of the real estate hereby conveyed.

Map 115, Parcels D16 and D17

**PRIOR INSTRUMENT REFERENCE:** Deed Book 753, Page 415, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia. See also, Certificate of Amendment to the Articles of Incorporation wherein Ohio Valley College, Inc. changed its name to Ohio Valley University, Inc., dated April 12, 2006, filed May 31, 2007, as recorded in Corporation Book 52, Page 793, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia.

**PARCEL TWO:**

All that certain lot, tract or parcel of land lying and being situate in the District of Parkersburg, County of Wood, and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at the Northeastern corner of Wirt and Dempsie Streets and running thence in an easterly direction 65 43/100 feet; thence in a southerly direction 205 feet; thence in a westerly direction 35 feet; thence in a northerly direction 205 feet to the place of beginning, and being Lot No. One in L. M. McDougal's Addition to the City of Parkersburg, West Virginia, a plat of said addition being of record in the Office of the Clerk of the County Commission of Wood County, West Virginia, in Plat Book No. 1, at Page 38.

Map 150, Parcel 1

**PRIOR INSTRUMENT REFERENCE:** Deed Book 785, Page 122, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia. See also, Certificate of Amendment to the Articles of Incorporation wherein Ohio Valley College, Inc. changed its name to Ohio Valley University, Inc., dated April 12, 2006, filed May 31, 2007, as recorded in Corporation Book 52, Page 793, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia.

**PARCEL THREE:**

All that certain lot, tract or parcel of land lying and being situate in the District of Parkersburg, County of Wood, and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at an iron pipe (found) in the southerly line of Ohio Valley College Investment Corporation (Deed Book 616, Page 403) being a common corner to O.V.C.I.C., Wood County Development Authority (Deed Book 701, Page 266) and Agape Housing, Inc. (Deed Book 850, Page 599).

Thence, with said line, S 64-17-35 E.; 903.42 feet to a concrete monument (found) being the south west corner of S-J Ventures (Deed Book 825, Page 362);

Thence, leaving said line and in a southerly direction across Wood County Development Authority the following courses and distances:

S 26-18-13 W., 200 feet to a point;
N 63-41-47 W., 335.00 feet to a point;
S 26-18-13 W., 136.25 feet to a point;
N 63-38-19 W., 169.99 feet to a point;
S 89-58-07 W., 169.60 feet to a point;
N 61-54-36 W., 152.00 feet to a point;
S 26-21-41 W., 79.98 feet to a point;
S 19-53-49 E., 279.00 feet to a point;
S 68-08-32 E., 205.00 feet to a point;
S 22-46-50 W., 198.30 feet to a point;
S 86-37-46 W., 82.78 feet to a point;
S 38-41-05 W., 124.01 feet to a point;
S 10-52-50 W., 129.21 feet to an iron pipe (found) in the northerly line of L.M. McDougal's Addition (Plat Book 1, Page 38).

Thence, with said line, N. 64-55-05 W., 116.61 feet to a point, being a common corner of Wood County Development Authority and said addition; thence, S. 16-50-00 W., 128.61 feet to a point;

Thence, across Wood County Development Authority Property (Tract "0") (6) courses and distances:

N 64-43-12 W., 156.20 feet to a point;
S 31-18-18 E., 55.08 feet to a point;
N 65-17-58 W., 717.21 feet to a point;
S 25-16-48 W., 146.84 feet to a point;
N 65-04-37 W., 236.00 feet to a point;
S 25-16-48 W., 191.36 feet to a point in the northerly line of A.F. & A.M Grand Lodge Trustees (Lot No. 7) (Deed Book 817, Page 504) (Vienna Corp. Line);

2

Thence, with said line, N 64-43-10 W., 627.42 feet to an iron pipe (found) being the southeast corner of Ohio Valley College Addition, Section "B" (Plat Book 12, Page 40);

Thence, N 24-55-50 E., 475.80 feet to an iron pipe (found) in the southerly line of 9th Street being the southwest corner of D. Brohard (Lot No. 71) (Deed Book 918, Page 33);

Thence, with said line S. 64-44-40 E., 311.17 feet to an iron pipe (found) being a common corner to Brohard and Wood County Development Authority;

Thence, with said line, N. 21-08-20 E., 202.37 feet to an iron pipe (found);

Thence, N 19-44-20 E., 219.68 feet to an iron pipe (found) being a common corner to Brohard and B.G. Stutler (Lot No. 69) (Deed Book 578, Page 92) thence, N 5-10-45 E., 180.05 feet to a concrete monument (found) in the Stutler line;

Thence, N 15-08-00 W., 98.94 feet to an iron pipe (found) being a common corner to Stutler and Agape Housing, Inc. (Tract "129") (Deed Book 850, Page 599);

Thence, with said line, N 24-49-25 E., 558.43 feet to the place of beginning.

Containing 57.156 acres, more or less, and being part of the same property conveyed to Wood County Development Authority in (Deed Book 701, Page 266).

The above property is shown on that certain plat prepared by James L. DeBrular, dated July 10, 1997.

Map 150, Parcel D

**PRIOR INSTRUMENT REFERENCE:** Deed Book 972, Page 549, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia. See also, Certificate of Amendment to the Articles of Incorporation wherein Ohio Valley College, Inc. changed its name to Ohio Valley University, Inc., dated April 12, 2006, filed May 31, 2007, as recorded in Corporation Book 52, Page 793, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia.

EXCEPTION is made for the following described premises, as conveyed by Ohio Valley College, Inc., d.b.a. Ohio Valley University to John M. Migliore and Diane H. Migliore, husband and wife, dated October 10, 2005, filed October 19, 2005, Deed Book 1088, Page 606, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

> Situate in the District of Parkersburg, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

> Beginning at a concrete monument, the southeasterly corner of lot Thirty-Four (34) of Wyndemere Subdivision (Plat Book 23, Page 17).

3

Thence, with the common line of the parent property (Deed Book 972, Page 549) and Ohio College, Inc. (Deed Book 978, Page 134), S 63° 42' 10" E. 109.01 feet to an iron rod.

Thence, with the interior of the parent property, two (2) courses:

S 25° 27' 02" W., 22.69 feet to an iron rod;
N 64° 55' 07" W., 109.37 feet to a point in the easterly line of Wyndemere (Deed Book 989, Page 569);

Thence, with the easterly line of said Wyndemere, N 26° 18' 13" E., 25.01 feet to the point of beginning and containing 2.604 square feet, more or less.

Map 150, Parcel D7

EXCEPTION is made for the following described premises, as conveyed by Ohio Valley College, Inc. to Wyndemere, a Land Development Corporation, dated October 28, 2001, filed October 31, 2001, Deed Book 1032, Page 337, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

Situate in the District of Parkersburg, County of Wood, State of West Virginia and being more particularly bounded and described as follows:

BEGINNING at a point in the northerly line of Wood County Development (Deed Book 701, at Page 266), said point being the southeasterly corner of Wyndemere, a Land Development Corporation (Deed Book 1020, at Page 365), thence with the easterly line of said Wyndemere, a Land Development Corporation (Deed Book 1020, at Page 365), N. 23 degrees 48' 09" E. 936.64 feet to a point, a common corner of Wyndemere, a Land Development Corporation (Deed Book 1020, at Page 365, Deed Book 1020, at Page 370, and Deed Book 989, at Page 569); thence with the easterly line of Wyndemere, a Land Development Corporation (Deed Book 989, at page 569) N. 26 degrees 18' 13" E. 189.03 feet to a point; thence with the interior of the parent tract, S. 42 degrees 03' 51" E. 492.59 feet to a point, a corner of Wood County Development (Deed Book 842, at Page 651); thence with the line of said Wood County Development (Deed Book 842, at Page 651); four (4) courses and distances, S. 26 degrees 21' 41" W. 79.98 feet to a point; thence S. 19 degrees, 53' 49" E. 279.00 feet to a point; thence S. 68 degrees 08' 32" E. 205.00 feet to a point; thence, S. 22 degrees 46' 50" W. 145.14 feet to a point; thence with the interior of the parent tract, three (3) courses and distances along a curve to the left, with a chord bearing of N. 74 degrees 17' 18" W. 31.34 feet, having a radius of 80.00 feet to a point, along a curve to the right, with a chord bearing of N. 63 degrees 44' 05" W. 610.40 feet, having a radius of 820.00 feet to a point; thence S. 25 degrees 10' 28" W. 529.43 feet to a point in the northerly line of said Wood County Development (Deed Book 701, Page 266); thence with the northerly line of said Wood County Development (Deed Book 701, Page 266) N. 65 degrees 17' 58" W. 200.92 feet to the point of beginning and containing 10.007 acres, more or less, as more particularly shown on that certain plat prepared by J.D. and Associates, Inc., dated October 26, 2001.

Map 150, Parcel D6

EXCEPTION is made for the following described premises as conveyed by Ohio Valley College, Inc. to Parkersburg Health Partners, LLC, an Ohio limited liability company, dated August 1, 2001, Deed Book 1032, Page 345, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

All that certain lot, tract or parcel of land lying and being in the District of Parkersburg, County of Wood, and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at an iron rod (set) in the intersection of the northerly line of Dimpsie Avenue with the westerly line of Wirt Street; thence with the westerly line of said Wirt Street; S. 16 degrees 50' 00" W. 128.61 feet to an iron rod (set), thence leaving the westerly line of Wirt Street, with the line of Wood County Development (Deed Book 701, Page 266) three (3) courses and distances, N. 64 degrees 43' 12" W. 156.20 feet to an iron rod (set), S. 31 degrees 18' 48" W. 55.08 feet to an iron rod (set) N. 65 degrees 17' 58" W., 313.61 feet to an iron rod set; thence with the interior of the parent tract, N. 25 degrees 10' 30" E. 529.40 feet to an iron rod (set), the southerly line of a proposed forty foot wide street, thence with the southerly line of said proposed street, following a curve to the left, having a radius of 820.00 feet, with a chord of S. 63 degrees 44' 16" E. 610.40 feet to an iron rod (set); thence with a curve to the right having a radius of 80.00 feet, with a chord of S. 74 degrees 17' 18" E. 31.34 feet to an iron rod (set); thence leaving said proposed street S. 22 degrees 46' 50" W. 53.16 feet to an iron rod (found); thence S. 86 degrees 37' 39" W. 82.78 feet to an iron rod (found); thence S. 38 degrees 41' 06" W. 124.01 feet to an iron rod (found); thence S. 10 degrees 52' 49" W. 129.21 feet to an iron pipe found in the northerly line of said Dimpsie Avenue; thence with the northerly line of said Dimpsie Avenue, N. 64 degrees 54' 50" W. 116.61 feet to the place of beginning and containing 5.70 acres, more or less, as more particularly shown on that certain plat prepared by J.D. & Associates, dated September 12, 2001.

Map 150, Parcel D5

EXCEPTION is made for the following described premises as conveyed by Ohio Valley College, Inc. to Wyndemere, a Land Development Corporation, dated October 31, 2000, filed December 1, 2000, Deed Book 1020, Page 365, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

All that certain lot, tract or parcel of land lying and being in the District of Parkersburg, County of Wood and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at a point, the southeasterly corner of Wyndemere Subdivision, Phase 2 (Deed Book 989, at Page 569); thence with the interior of the parent tract, S 23 degrees 48' 09" W. 937.15 feet to a point in the northerly line of Wood County Development (Deed Book 701, at Page 266); thence part of a line with said Wood County Development, N. 65 degrees 17' 58" W. 369.26 feet to a point, the corner of Wyndemere Subdivision Revised Phase 3, passing a common corner of said Wood County Development and said Wyndemere Subdivision Revised Phase 3, at 182.02 feet; thence

continuing with said Wyndemere Subdivision, Revised Phase 3, two (2) courses and distances; thence N. 25 degrees 16' 50" E. 436.39 feet to a point; thence N. 59 degrees 40' 08" E. 610.96 feet to the point of beginning and containing 5.70 acres, more or less, as more particularly described on that plat prepared by J.D. & Associates, dated October 24, 2000.

There is also conveyed herein to the Grantee and its assigns, easements to be located at such locations upon property retained by the Grantor to the east and south of the herein conveyed property with consent of the Grantor herein so as not to unreasonably interfere with the property retained by the Grantor, said easements to be for the use of the above property for utility lines to said property which is to be subdivided into a housing subdivision and be for gas lines, water lines electrical lines, sanitary lines and telephone and cable lines if necessary for the development of said property.

The parties of the first part do grant unto the party of the second part and its assigns the right to dedicate any portion of the above property to be used as a roadway and be dedicated to public use for the installation of roadways, pedestrian ways and any and all utility lines.

RESERVATION: It is the intention of the parties that the above acreage will be subdivided into lots with proposed streets 40 feet in width and the grantor herein retains an easement for ingress and egress from its remaining property to 12th Street in the City of Vienna, West Virginia, said easement to also include the right to install any and all utility lines to the remaining property as well as be for vehicle and pedestrian access along the streets of the above acreage to be subdivided, it being further understood that any proposed streets may be dedicated for public use by the party of the second part or its grantees and assigns.

Map 150, Parcel D4

EXCEPTION is made for the following described premises, as conveyed by Ohio Valley College, Inc. to Wyndemere, a Land Development Corporation, dated October 31, 2000, filed December 1, 2000, Deed Book 1020, Page 370, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

All that certain lot, tract or parcel of land lying and being in the District of Parkersburg, County of Wood and State of West Virginia, more particularly bounded and described as follows:

BEGINNING at the southwest corner of Wyndemere Subdivision, Phase II, as described in Deed Book 989, at Page 569; thence with the southerly line of said Phase II, five (5) courses and distances: thence S. 70 degrees 24' 43" E. 269.47 feet; thence N. 21 degrees 08' 18" E. 113.97 feet; thence S. 83 degrees 59' 18" E. 250.08 feet; thence N. 26 degrees 18' 13" E. 171.28 feet; thence S. 61 degrees 54' 36" E. 250.08 feet; thence with the interior of the parent tract, three (3) courses and distances; thence S. 59 degrees 40' 08" W. 610.96 feet; thence S. 25 degrees 16' 50" W. 436.39 feet; thence S. 65 degrees 17' 58" E. 187.24 feet; thence with the line of Wood County Development Authority (Deed Book 701, Page

266), three (3) courses and distances; thence S. 24 degrees 16' 48" W. 146.84 feet; thence N. 65 degrees 04' 37" W. 236.00 feet; thence S. 25 degrees 16' 48" W. 191.36 feet, to a point in the northerly line of A. F. & A. M. Grand Lodge Trustees (Deed Book 817, Page 604); thence with the northerly line of said Lodge Trustees, N. 64 degrees 43' 10" W. 287.51 feet; thence with the interior or the parent tract, N. 21 degrees 28' 35" E. 476.98 feet; thence with the line of D. Brohard (Deed Book 918, at page 33) two (2) courses and distances; N. 21 degrees 08' 20" E. 202.37 feet; thence N. 19 degrees 44' 20" E. 219.68 feet to the point of beginning and containing 10.244 acres, more or less, less City of Vienna tract of 3.44 acres for a total of 9.90 acres, more or less, as more particularly described on that plat prepared by J.D. & Associates, dated July 27, 1999 and revised on October 20, 2000.

Map 150, Parcel D3

EXCEPTION is made for the following described premises, as conveyed by Ohio Valley College, Inc., a West Virginia Corporation, and Ohio Valley College Investment Corporation, Incorporated, a West Virginia Corporation to Wyndemere, a Land Development Corporation, dated October 7, 1998, filed October 9, 1998, Deed Book 989, Page 569, Records of the Office of the Clerk of the County Commission of Wood County, West Virginia:

All that certain lot, tract or parcel of land lying and being in the District of Parkersburg, County of Wood and State of West Virginia, more particularly bounded and described as follows:

COMMENCING at a spike found in the southerly line of 12th Street at its termination point; thence with said line, extended S. 64 degrees 10' 15" E. 348.79 feet to an iron pipe (found), being a common corner to Agape Housing, Inc. (Deed Book 850, at Page 599) and Wyndemere Subdivision (Phase I); thence with the easterly line of Agape Housing, Inc. S. 24 degrees 49' 23" W. 266.23 feet to a point being the southwest corner of Wyndemere Subdivision (Phase I), the true point of beginning; thence with the southerly line of said subdivision, four (4) courses and distances; S. 65 degrees 10' 37" E. 185.0 feet to a point; thence N. 80 degrees 55' 47" E. 625.68 feet to a point; thence S. 25 degrees 24' 43" W. 95.73 feet to a point; thence S. 64 degrees 55' 07" E. 199.93 feet to a concrete monument (found) in the northerly line of Wood County Development Authority (Deed Book 701, at Page 266); thence with the interior of Wood County Dev. Authority, six (6) courses and distances; S. 26 degrees 18' 13" W. 392.04 feet to a point; thence N. 61 degrees 54' 36" W. 250.08 feet to a point; thence S. 26 degrees 18' 13" W. 171.28 feet to a point; thence N. 83 degrees 59' 18" W. 278.56 feet to a point; thence S. 21 degrees 08' 18" W. 113.97 feet to a point; thence N. 70 degrees 24' 43" W. 269.47 feet to an iron pipe (found) in the westerly line of Wood County Dev. Authority, being a common corner to Wood County Dev. Authority, D. Brohard (Deed Book 918, at Page 33) and B.G. Stutler (Deed Book 578, at Page 92); thence N. 05 degrees 10' 45" E. 180.05 feet to a concrete monument (found); thence N. 15 degrees 08' 00" W. 82.08 feet to an iron pipe (found), being a common corner to Wood County Dev. Authority, Stutler, and Agape Housing, Inc.; thence with the easterly line of Agape Housing, Inc.; N. 24 degrees 49' 23" E. 291.0 feet to the point of beginning, containing 10.154 acres, more or less, as shown on the plat prepared by James L. DeBrular, dated September 24, 1998.

7

There is also conveyed herein to the Grantee and its assigns, easements to be located at such locations upon property retained by the Grantor to the east and south of the herein conveyed property with consent of the Grantor herein so as not to unreasonably interfere with the property retained by the Grantor, said easements to be for the use of the above property for utility lines to said property which is to be subdivided into a housing subdivision and be for gas lines, water lines, electrical lines, sanitary sewer lines and telephone and cable lines if necessary for the development of said property.

The parties of the first part do grant unto the party of the second part and its assigns the right to dedicate any portion of the above property to be used as a roadway and be dedicated to public use for the installation of roadways, pedestrian ways and any and all utility lines.

**RESERVATION:** It is the intention of the parties that the above acreage will be subdivided into lots with proposed streets 40 feet in width and the grantor herein retains an easement for ingress and egress from its remaining property to 12th Street in the City of Vienna, West Virginia, said easement to also include the right to install any and all utility lines to the remaining property as well as be for vehicle and pedestrian access along the streets of the above acreage to be subdivided, it being further understood that any proposed streets may be dedicated for public use by the party of the second part or its grantees and assigns.

There is also conveyed herein to the Grantee and its assigns, easements to be located at such locations with consent of the Grantor herein so as not to interfere with the property retained by the Grantor, said easements to be for the use of the above property for utility lines to said property which is to be subdivided into a housing subdivision and be for gas lines, water lines, electric lines, sanitary sewer lines and telephone and cable lines if necessary for the development of said property.

It is the intention that the above acreage will be subdivided into lots with proposed streets 40 feet in width and the grantor herein retains an easement for ingress and egress from its remaining property to 12t$^{h}$ Street in the City of Vienna, West Virginia, said easement to include the right to install any and all utility lines to the remaining property held by the grantor as well as be for vehicle and pedestrian access along the streets of the above acreage to be subdivided, it being further understood that any proposed streets may be dedicated for public use by the party of the second part or its grantees and assigns.

Map 150, Parcel D2

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Signing Date.

**BUYER:**

WVU AT PARKERSBURG FOUNDATION, INC.

By: _____

**OVU:**

B. RILEY FINANCIAL, INC. d/b/a B. RILEY, successor by merger to ABTV RECEIVERSHIP SERVICES, LLC, acting solely in its capacity as Special Receiver for Ohio Valley University, Inc.

By:_____
    P. Michael Kain

By:_____
    Thomas H. Fluharty, Chapter 7 Trustee for Ohio Valley University, Inc.

*Signature Page to the Asset Purchase Agreement*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above-referenced **MOTION TO SELL PROPERTY FREE AND CLEAR OF LIENS AND ORDER ON MOTION** was served on the parties that receive electronic notification in these proceedings.  The Motion was also served on the parties listed below via U.S. Mail, postage prepaid, on ___July 5, 2023___.


WVU at Parkersburg Foundation, Inc.
300 Campus Drive
Parkersburg, WV 26104

Steptoe & Johnson, PLLC
Attn: Brian D. Gallagher, Esquire
1000 Swiss Pine Way, Ste 200
Morgantown, WV 26501

Steptoe & Johnson, PLLC
Attn: Sarah C. Ellis, Esquire
707 Virginia St, E, Ste 1700
Charleston, WV 25301


B. Riley Financial, Inc.
Attn: Mike Kain
11931 Smoketreet Drive
North Chesterfield, VA 23236

Whiteford Taylor & Preston, LLP
Attn: Brandy M. Rapp, Esquire
10 S. Jefferson St, Ste 1110
Roanoke, VA 24011


Served electronically on:

Martin P. Sheehan, Esquire
Martin@MSheehanlaw.net
*Counsel for Debtor*

Office of the U.S. Trustee
ustpregion04.ct.ecf@usdoj.gov

                                         /s/ Thomas H. Fluharty
                                         Thomas H. Fluharty, Trustee